Karl Vaillancourt
Defendant, Pro Se
29 State Street
North Haven, CT 06473

FILED

2004 SEP 16 P 12: 00

U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Aaron Ben Northrop, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:01-CV-364 (AVC) |
| | ) | |
| | ) | |
| Karl Vaillancourt, | ) | September _16_, 2004 |
|     Defendant. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OFFER OF PROOF REGARDING ORDER TO SHOW CAUSE AND DEFENDANT'S RENEWED MOTION TO DISMISS

Now comes Karl Vaillancourt, defendant in the instant action, and pursuant to Local Rule § 7(d), responds to plaintiff's offer of proof made in response to this Honorable Court's Order to Show Cause.

## BACKGROUND

On August 6, 2004, this Court entered an Order to Show Cause which, in relevant part, stated that plaintiff was ordered to produce the original promissory note, which is the subject matter of this action, or to otherwise explain – in accordance with relevant statutes – the basis upon which he is nevertheless entitled to enforce the note.

On August 27, 2004, plaintiff filed an explanation as to why he believes he is entitled to enforce the note at issue, but did not produce the original promissory note. The plaintiff set forth therein the argument that Conn. Gen. Stat. § 42a-3-309(a) serves as his basis for entitlement to enforce the note.

1

The defendant now responds and objects to plaintiff's suggested basis for entitlement to enforce the note.

**FACTS**

The plaintiff invested more than $100,000 in drug trafficking proceeds to establish a company called Marble and Granite Network of America ("MAGNA") in early 1990. *Superseding Indictment*, dated December 9, 1992, Grand Jury N-91-2, Docket 3:92-CR-00032 (AHN), Criminal Docket Entry No. 74 at 5 (page attached as Exhibit A) (hereinafter "*Indictment*"), Count One, Overt Acts No. 13, and Count Three, copy attached as Exhibit B; *Affidavit of Trooper Murray*, at 5, dated April 15, 1997, appended to *Plaintiff's Objection to Defendant's Motions to Dismiss*, July 7, 2003, Docket Entry No. 45.

The plaintiff, with the assistance of competent counsel, did voluntarily and knowingly plead guilty to all of the Overt Acts forming the basis for Counts One, Three, Four, Five and Six of the *Indictment* on March 11, 1993. *Change of Plea*, Docket 3:92- CR-00032 (AHN), Criminal Docket Entry No. 104 at 7-8 (pages attached as Exhibit C); *Aaron B. Northrop v. U.S.A.*, 1998 U.S. Dist. LEXIS 677, *1 and *8-10. Copy attached as Exhibit D.

The plaintiff's conviction and trial proceedings were upheld on direct appeal to the Second Circuit. *U.S.A. v. Northrop*, 1994 U.S. App. Lexis 32855 (40 F.3d 1238 – unpublished, summarily affirmed), November 1, 1994.

In the plaintiff's four habeas actions, he has never made a collateral attack by raising an argument that any of his property was illegally obtained by the Government.  See 3:96-CV-0836(AHN) (dismissed w/o prejudice), 3:97-CV-0712(AHN) (ruled on and dismissed), 3:99-CV-1571(AHN) (dismissed) and 3:00-CV-0830(AHN) (dismissed); see *Aaron B. Northrop v. U.S.A.*, 1998 U.S. Dist. LEXIS 677, *5. See Exhibit D.

2

The promissory note in question is admitted to have been part of the formation of the MAGNA enterprise. *Plaintiff's First Motion for Default Judgment*, June 10, 2002, Proof of Claim at page 2, Docket Entry No. 13; *Plaintiff's First Set of Interrogatories to Defendant*, Interrogatory 12, dated May 4, 2002, see attachment to Docket Entry No. 54; *Northrop's Subpoena to Attorney John Walkley*, dated June 18, 2001, appended to *Plaintiff's Response to Order to Show Cause*, dated August 27, 2004, at Exhibit B, Docket Entry No. 80.

The original promissory note is in the possession of the United States Attorney as lawfully seized property. *Plaintiff's Response to Order to Show Cause*, at page 1, page 2 of Exhibit A (*subpoena*), and at Exhibit C (*Letter of U.S. Department of Justice to Aaron Northrop, dated April 3, 2003 Regarding Subpoena and Freedom of Information Act Request*), August 27, 2004, Docket Entry No. 80; *Motion of Northrop for Order to Comply With Subpoena*, Docket Entry No. 22, entered April 7, 2003.

The promissory note in question was considered by the United States Attorney to be property connected with plaintiff's drug crimes and his continuous criminal enterprise. *Subpoena of the United States to Timothy B. Yolen*, dated February 23, 1993, at page 2 of Exhibit A to *Plaintiff's Response to Order to Show Cause*, dated August 27, 2004, Docket Entry No. 80.

The plaintiff previously motioned for a return of seized property under Rule 41(e) on April 29, 1995, and lost. See *Motion*, Criminal Docket Entry No. 55, Docket 3:92- CR-00032 (AHN); *Endorsement Order*, Criminal Docket Entry Unnumbered, dated July 25, 1998 (granting Government's motion for summary judgment [Docket Entry No. 214]).

The plaintiff admitted that all of his assets were confiscated by the Government, and that he only had until the 11-year anniversary of the loan (February 8, 2001) to sue defendant, which essentially admits that there was no extension agreement for the purpose of enforcement of the

note. *Letter of Aaron Northrop to Timothy B. Yolen*, dated December 11, 2002, at 1-2, copy attached as Exhibit E.

## LAW

**Entitlement to Enforce Lost Note:**

Conn. Gen. Stat. § 42a-3-301, provides:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418(d).

Conn. Gen. Stat. § 42a-1-201(20), in relevant part, provides:

> "'Holder', with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession."

Conn. Gen. Stat. § 42a-3-309, regarding enforcement of lost, destroyed or stolen instruments, provides:

> "(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, **and** (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) **A person seeking enforcement of an instrument under subsection (a) must prove** the terms of the instrument and **the person's right to enforce the instrument**. If that proof is made, section 42a-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means."

(Emphasis added.)

4

**Lawful Seizure:**

"From the time of the founding to the present, the word 'seizure' has meant a 'taking possession.'" *California v. Hodari D.*, 499 U.S. 621, 624 (1991).

"A seizure is a single act, and not a continuous fact. Possession, which follows seizure, is continuous." *Thompson v. Whitman*, 85 U.S. 457, 471, 21 L.Ed. 897 (1873).

"There is a presumption of legitimacy accorded to the Government's official conduct." *Department of State v. Ray*, 502 U.S. 164, 178-179 (1991). "[I]n the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

**Standing**:

"A claimant has no property right in illegal drugs [or] proceeds from selling illegal drugs, and the Government, having take[n] possession of the property used to commit drug offenses, [] holds an unperfected right to title to the property. . . ." *Alli-Balogun v. U.S.*, 281 F.3d 362, 371 (2d Cir. 2002) (quoting and adopting *United States v. Clymore*, 245 F.3d 1195, 1200 (10th Cir. 2001) ("Clymore III") (internal quotation marks omitted) (alteration in original).

"If . . . [it is] establishe[d] that the property is § 881(a) property - i.e., proceeds traceable to illegal drug transactions – then the claimant cannot prove a right to lawful possession and an equitable right to its return unless the claimant is an innocent owner." *Id.*, at 372.

"No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, **or to acquire property by his own crime**. These maxims are dictated by public policy, [and] have their foundation in universal law administered in all civilized countries. . . ." *Bird v. Plunkett*, 139 Conn. 491, 496-97, 95 A.2d 71 (1953) (internal quotation marks omitted) (emphasis added).

**Guilty Pleas**:

Self-inculpatory statements made under oath during a plea allocution are generally treated as conclusive in the face of later attempts to contradict them, absent a credible reason "justifying departure from their apparent truth." *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992).

## ARGUMENT

The plaintiff's most recent filing proves defendant's position that plaintiff is not entitled to enforce the note in question.

The plaintiff and defendant agree on one thing – that the note is in the possession of the United States Government. Since the plaintiff is admittedly not in possession of the original note, he is not a holder by definition. Therefore, the only way the plaintiff could qualify to enforce the note in question is if he proves he meets each of the three conditions set out in Conn. Gen. Stat. § 42a-3-309. The plaintiff has not come close to alleging facts supporting such qualification.

Drug sale proceeds were the source of the loan, so plaintiff fails statutory test (i), in that he was never entitled to enforce, possess or receive the note. It is his burden to show some evidence that the source was not drug sale proceeds, and the evidence he has submitted tends to prove that the source was such.

The note in question was clearly the subject of a lawful seizure of the United States, as any taking of possession constitutes a seizure, and there is no indication anywhere in the record that such was accomplished unlawfully. The presumption at law is that the Government's action was not unlawful, absent clear evidence otherwise.

Nowhere in the applicable statute is a "forfeiture" or "judgment of forfeiture" required to prevent enforceability – it only says enforcement is barred to a person not in possession of an original note where such was the subject of a "lawful seizure." But even if forfeiture were

6

required, the immediate and imperfect forfeiture provided at law, without formal condemnation proceedings, would still suffice to obviate plaintiff's claim to enforceability. And so, the plaintiff fails test number (ii).

There is no allegation that the original note was destroyed. Its whereabouts have been determined. The note is not in the wrongful possession of an unknown person, or a person that cannot be found, or is not amenable to service of process. The plaintiff fails test (iii).

The statute in question, however, is an "and" proposition. If the plaintiff fails any one of these three tests, he is not entitled to enforce the note.

Furthermore, subsection (b) of the applicable statute says that one who seeks to use subsection (a) must explicitly prove their entitlement to enforce the note. This requires the presentation of some evidence of entitlement pre-trial that would lead one to conclude plaintiff has a possibility of meeting the full standard at trial. He hasn't provided any basis to conclude he could meet these standards.

The Government obtains imperfect title to the proceeds of drug crimes upon the crime's commission. 21 U.S.C. §881(a)(6), (c) and (h). The forfeiture is immediate, as is the vesting of title in the Government. *United States v. Stowell*, 133 U.S. 1, 16-17 (1890). It need not ever proceed with a forfeiture proceeding. The only purpose of a forfeiture proceeding is to perfect title for future enforcement.

The plaintiff's guilty pleas to Count One (Conspiracy to Distribute) and Count Three (Continuous Criminal Enterprise) of the *Indictment* (and specifically to Overt Act No. 13 at page 4) prove that the plaintiff used drug monies to form MAGNA. All protestations aside, this is conclusive of the fact unless plaintiff can demonstrate some reason why his plea allocution should be disregarded. *Gonzalez*, *supra*, at 1101. He has made no such showing to date.

The plaintiff has readily admitted on at least three occasions that the promissory note at issue was part of the formation of MAGNA. This, combined with his admission contained within his guilty plea that MAGNA was formed with drug trafficking proceeds, proves that plaintiff is not entitled to enforce or possess the original promissory note. *Adames v. United States*, 171 F.3d 728, 732-33 (2d Cir. 1999). It would be difficult to adduce more clear and convincing evidence that the plaintiff was loaning drug monies, absent videotape. The plaintiff cannot possess an "injury in fact" in this instance, and lacks standing to sue on the note. The Court therefore lacks subject matter jurisdiction. *N.Y. Coastal P'ship, Inc. v. United States Dep't of the Interior*, 341 F.3d 112, 116 (2d Cir. 2003).

The plaintiff's filing claims that the subject note was seized by subpoena of the United States no later than March 8, 1993 and remains in its possession today. He avers that he could gain possession of the original note by subpoena or by motion for return. A subpoena would be procedurally ineffective in securing a return. More importantly, it is highly unlikely that plaintiff could gain possession of the original note by motion for return under Rule 41(g). Aside from his inability to prove that he is an innocent owner, he would face significant hurdles to maintaining such an action. The statute of limitations applicable to a motion for return of seized property is a combined eleven years from the date of the seizure, if no forfeiture proceeding took place, and the cause of action accrued prior to August 23, 2000. See *Polanco v. U.S. Drug Enforcement Administration*, 158 F.3d 647, 654 (2d Cir. 1998); *Boero v. Drug Enforcement Admin.*, 111 F.3d 301, 305 (2d Cir. 1997); *U.S. v. Sims*, 376 F.3d 705, 708-709 (7th Cir. 2004). In all likelihood, such an action by this plaintiff would be barred by time.

## CONCLUSION

Because the underlying consideration for the promissory note was drug sale proceeds, the plaintiff was not entitled to enforce the note at the time possession of the original was lost.

Plaintiff is therefore barred from enforcing the note pursuant to Conn. Gen. Stat. §42a-3-309(a)(i).

Because the promissory note in question was clearly the subject of a lawful seizure, it remains seized today, and plaintiff is not in possession, he is therefore barred from enforcing the note by the explicit terms of Conn. Gen. Stat. §42a-3-309(a)(ii).

Because the original promissory note was not destroyed, because its whereabouts are known, because it is not in the wrongful possession of someone unknown or not amenable to service of process, and because plaintiff is not in possession, he is barred from enforcing the note by Conn. Gen. Stat. §42a-3-309(a)(iii).

Because plaintiff has not shown any evidence supporting his entitlement to enforce the note, as is required by Conn. Gen. Stat. §42a-3-309(b), he cannot claim a right to enforcement under Conn. Gen. Stat. §42a-3-309(a).

Because the underlying consideration for the promissory note was drug sale proceeds, the plaintiff lacks any legally-protectable right, title or interest in the note, and therefore lacks standing to sue. Such causes this Court to lack subject matter jurisdiction.

Because the plaintiff failed to pursue a return of seized property in regard to the note within the eleven-year period for doing so, such has essentially been forfeited to the United States, and is unenforceable by this plaintiff.

Because plaintiff has failed to demonstrate possession, failed to demonstrate a right to enforce the promissory note, and because the best evidence rule requires the production of the original note where fairness is an issue, defendant requests that his motion to strike Part IX (Exhibits) of plaintiff's trial memorandum be granted, and that plaintiff be barred from introducing copies of the promissory note and ancillary documents as evidence at trial. Such would be misleading to a jury by providing an unwarranted imprimatur of validity to plaintiff's

claim, where the weight of the evidence pre-trial is that such is not valid, and where a sound

defense is predicated on the invalidity of the undertaking.

Finally, for the foregoing reasons, defendant Vaillancourt renews his motion to dismiss

this action, and prays that this Court would now appropriately dismiss the plaintiff's complaint.

Respectfully submitted this _16_ th day of September, 2004.

Karl Vaillancourt
Defendant, *Pro Se*
29 State Street
North Haven, CT 06473

**ORAL HEARING IS NOT REQUESTED**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the within response was mailed, certified, return receipt requested and postage prepaid, to plaintiff Aaron Ben Northrop, at Reg. No. 61713-080, Victorville U.S. Penitentiary, P.O. Box 5600, Adelanto, CA 92301, on this _16_ th day of September, 2004.

Karl Vaillancourt
Defendant, *Pro Se*
29 State Street
North Haven, CT 06473

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET                    AARON NORTHROP

AO 256A

| DATE | | PROCEEDINGS (continued) | V. EXCLUDABLE DELAY | | | |
|------|---|---|---|---|---|---|
| | | (Document No.) | (a) | (b) | (c) | (d) |
| 1992 | | | | | | |
| 11/20 | 68 | GOVT'S Response to Deft's Motion to Dismiss Count Three, filed (Ctb) | | | | |
| 11/23 | 69 | MOTION to enlarge time to file Pre-trail Motions filed by deft (until 12/30/92) (ctb) | | | | |
| 11/23 | 70 | REQUEST for Oral Argument filed by deft. (ctb) | | | | |
| | 71 | DEFT'S Objection to Govt's Motion for reconsideration for the Court's Order Continuing Jury selection until 3/3/93. filed. 9ctb) | | | | |
| | 72 | MOTION to Appoint Co-Counsel filed (ctb)   (With attach memo) | | | | |
| 11/25 | | MOT #70 end. DENIED as moot. So ordered. Nevas,J cc: attys rak | | | | |
| | | MOT# 71 end. Overruled. At a status conf held 11/16/92 the Court set March 8, 1993 for jury selection with the trial to commence immediately thereafter. SO ORDERED. NEVAS,J cc: attys rak | | | | |
| | | Mot #72 end. GRANTED . the Court appoints Richard Cramer, Esq. as co-Counsel. SO ORDERED. NEVAS, J cc: attys rak | | | | |
| | | Mot 69 end. GRANTED. NEVAS, J cc: attys rak | | | | |
| 12/7 | | CJA For 20 appointing Richard S. Cramer, Esq. o/b/o deft Aaron Northrop approved. NEVAS, J #0486227 rak | | | | |
| **12/3 | 73 | ORDER ENT. Appointing co-counsel Richard Cramer o/b/o deft Aaron Northrop.NEVAS, J cc: attys. rak | | | | |
| 12/9 | 74 | SUPERSEDING INDICTMENT returned and filed in New Haven (GJ/N91-2). Assigned to AHN. Bench warrant to issue and lodge as detainer. Latimer,M.J., (Noor,D.C, Falzarano,r.) (ctb) 4:35-4:38 | | | | |
| | 75 | CRIMINAL Case Assignment Info Form filed. (ctb) Warrant issued and handed to USM for service. (ctb) | | | | |
| 12/17 | | ARRAIGNMENT: Plea of NOT GUILTY entered to Counts 1,2,3,4,5,6,7 of Superseding Indictment. Jury Selection shall be held on 3/8/93 at 9:30. Trial to begin immediately. Deft. remains in custody. Margolis, M.J., (Krajcik, D.C., Kislingbury,R.) (ctb) 9:45-9:50,9:50-10:00 | | | | |
| 12/17 | 76 | GOVT'S Supplemental Response to Deft's Motion to Dismiss Count Three, filed. (ctb) | | | | |
| 12/17 | 77 | ORDER filed and ent: Jury selection is tentatively scheduled for 3/8/93 subject to the time between arraignment and trial being extended while the Court has motions under consideration or otherwise as the Court may order. SO ORDERED. Margolis, M.J. cc:counsel (ctb) | | | | |
| *12/15 | 78 | RETURN of Service on Warrant exc. by USM, filed. (ctb) | | | | |
| 12/23 | 79 | GOVT'S response to deft's Motion to Dismiss the Indictment Based on Grand Jury Composition, filed. (Ctb) | | | | |
| 12/30 | 80 | MOTION FOR Enlargement of Time in Which to File Pre-trial Motions, filed by deft. | | | | |
| | 81 | MOTION to Accept Previously Filed Motions to Previous Indictment, Filed by deft. | | | | |
| | 82 | Request fo Oral Argument (Motions filed on 12/30/92) Filed by deft. (ctb) | | | | |
| | 83 | Request for Oral Argument (mot filed on 12/28) filed by def.t (ctb) | | | | |
| | 84 | Motion to Dismiss Counts Five and Six of the Superseding Indictment  Charging a Vilation of 18 USC sec. 1958, filed by deft.(ctb) | | | | |

EXHIBIT
A

Interval (per Section II)    Start Date / End Date    Ltr. Code / Total Days

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me as the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.

| SIGNATURE | |
|---|---|
| *Paul J. Palermo* (signature) | |
| NAME | DATE |
| Paul J. Palermo | June 17, 2004 |
| TITLE | |
| Supervisory Archives Specialist | |
| NAME AND ADDRESS OF DEPOSITORY | |
| NARA, Northeast Region (Boston) Office of Regional Records Service 380 Trapelo Road Waltham, MA  02452 | |

NA FORM 13040 (10-86)

EXHIBIT

B

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury N-91-2

United States Distr... ...t
District of Connecticut
FILED AT     NEW HAVEN

12/9/92 , 19

Kevin F. Rowe, Clerk

By _____

Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| AARON NORTHROP | : |

Criminal No. 3:92CR00032(AHN)

Violations:

21 U.S.C. § 846
  (Conspiracy to distribute
  marijuana and cocaine)
21 U.S.C. § 841(a)(1)
  (Possession with intent
  to distribute cocaine)
21 U.S.C. § 848
  (Engaging in a Continuing
  Criminal Enterprise)
26 U.S.C. §§ 5861(c) and (f)
  (Make and possess a destructive
  device)
18 U.S.C. § 1958
  (Use of interstate commerce
  facilities in the commission
  of murder-for-hire)
18 U.S.C. § 401(3)
  (Contempt of Court)

S U P E R S E D I N G
I N D I C T M E N T

The Grand Jury charges:

COUNT ONE
(21 U.S.C. § 846)

From in or about the Summer of 1988 and continuing to on or about April 7, 1992, the exact dates unknown to the Grand Jury, in the District of Connecticut and elsewhere,

AARON NORTHROP,

defendant herein, together with coconspirator Anthony Amendola,

- 2 -

who is not charged as a defendant herein, and other coconspirators known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, confederated, and agreed together and with one another to possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## Overt Acts

In furtherance of this conspiracy and to effect its objects, NORTHROP and his coconspirators committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

1.    In or about the Summer of 1988, NORTHROP, Amendola, and a third person drove from Connecticut to New York City and purchased approximately one kilogram of cocaine for approximately $18,500 that they later distributed in Connecticut.

2.    Between in or about the Summer of 1988 and in or about December 1988, NORTHROP, Amendola, and others regularly drove from Connecticut to the Bronx, New York and purchased multi-pound quantities of marijuana and kilogram quantities of cocaine from a Jamaican woman called "Sheila."

3.    On or about October 12, 1988, NORTHROP, Amendola, and others stored approximately one pound of marijuana and one ounce of cocaine in NORTHROP's van parked at 37 Bradley Avenue, East Haven, Connecticut.

- 3 -

4.   On or about October 12, 1988, NORTHROP maintained records relating to his drug trafficking organization at his residence, 34 Harmac Drive, East Haven, Connecticut.

5.   Between in or about December 1988 and in or about March 1990, NORTHROP, Amendola, and others regularly flew to Phoenix, Arizona and El Paso, Texas to purchase multi-pound quantities of marijuana for distribution in Connecticut.

6.   At various times relevant to this Indictment, NORTHROP, Amendola, and others maintained locations to store marijuana and cocaine in the New Haven area of Connecticut, including the trunks of unregistered cars, an apartment at Building 3, Apartment 16, Blue Cliff Hills Apartments, New Haven; Hidden Quarry, New Haven; Apartment 14A, Thompson Gardens, East Haven; a condominium at 515 Emerson Drive, Branford; 135 North Taylor Avenue, Norwalk; and Apartment 1R, 294 Quinnipiac Avenue, New Haven.

7.   At various times relevant to this Indictment, NORTHROP, Amendola, and others used aliases, that is, names other than their own in travelling to buy cocaine and marijuana, such as when staying at motels and flying on airlines.

8.   At various times relevant to this Indictment, NORTHROP, Amendola, and others possessed and used paging devices, also called "beepers," so that they could contact one another and so that drug customers could contact them to order marijuana and cocaine.

- 4 -

9. Between in or about April 1989 and on or about June 22, 1989, NORTHROP, Amendola, and others made a pipe bomb at Northrop's house at 34 Harmac Drive, East Haven, Connecticut that was to be used to kill John Finnimore who NORTHROP suspected had provided police with information about his drug trafficking organization.

10. On or about April 7, 1989, a person visited a gun store in North Branford, Connecticut with NORTHROP and purchased two 9 millimeter pistols.

11. On or about December 19, 1989, pursuant to NORTHROP's instructions, three persons flew from El Paso, Texas to Hartford, Connecticut carrying approximately 200 pounds of marijuana in their luggage that they later distributed in Connecticut.

12. On or about December 20, 1989, at Amendola's residence at 346 High Street, East Haven, Connecticut, NORTHROP, Amendola and four persons repackaged the marijuana described in overt act eleven.

13. In or about January or February 1990, NORTHROP invested approximately $100,000 in United States currency, which was drug trafficking proceeds, to establish a company called Marble and Granite Network of America ("MAGNA") located at 100 Airport Road, Hartford, Connecticut.

14. On or about March 4, 1990, pursuant to NORTHROP's instructions, three other persons attempted to fly from El Paso, Texas to Hartford, Connecticut with approximately 270 pounds of

- 5 -

marijuana concealed inside six suitcases.

15. On or about August 9, 1990, a person flew from Bradley International Airport in Connecticut to Phoenix, Arizona to purchase marijuana.

16. In or about November 1990, Amendola and another person purchased between 18 and 26 pounds of marijuana in Mexico and attempted to bring the marijuana to Connecticut for distribution.

17. On or about December 4, 1990, NORTHROP rented a red Jeep Cherokee automobile from an automobile dealership in Derby, Connecticut. Amendola and another person drove the rented Jeep from Connecticut to Chihuahua, Mexico and traded the Jeep for approximately 60 pounds of marijuana. Amendola, after losing approximately 50 pounds of marijuana while crossing the Rio Grande River, arranged for 10 pounds of marijuana to be transported to and later distributed in Connecticut.

18. On or about December 9, 1990, NORTHROP falsely reported to the police that the rented Jeep Cherokee had been stolen from a movie theater parking lot in North Haven, Connecticut.

19. Beginning in or about January 1991, NORTHROP maintained" an apartment located at 601 Mesa Hills Drive, El Paso, Texas.

20. In or about February 1991, a person transported 30 pounds of marijuana on a bus from El Paso, Texas to New York City. Amendola picked up the marijuana in New York City and transported it to Connecticut where it was distributed.

- 6 -

21. In or about February 1991, NORTHROP and Amendola drove to Mexico and traded a rented 1990 Ford truck plus $1,000 for approximately 30 pounds of marijuana that was later transported to and distributed in Connecticut.

22. On or about February 16, 1991, a coconspirator crossed the border from Mexico into El Paso, Texas with approximately nine pounds of marijuana.

23. On or about March 18, 1991, a person falsely reported to a rental agency that the rented 1990 Ford truck had been stolen.

24. In or about April 1991, NORTHROP purchased between 50 and 90 pounds of marijuana in Mexico. NORTHROP then bribed a corrupt United States border guard, who allowed the marijuana to enter the United States. The marijuana was flown to New York City where Amendola retrieved it and took it to Connecticut and it was later distributed.

25. Between in or about April 1991 and in or about October 1991, NORTHROP transported multi-pound loads of marijuana into the United States from Mexico. NORTHROP bribed a corrupt United States border guard to allow the vehicles containing marijuana to cross the border without being inspected.

26. On or about October 3, 1991, NORTHROP opened and used a safe deposit box at First City, Texas, a bank located at 690 Sunland Park, El Paso, Texas.

- 7 -

27.  On or about October 14, 1991, NORTHROP and three other persons purchased over 400 pounds of marijuana in Mexico.  After the car containing the marijuana was stopped by the Mexican Federale Police, NORTHROP attempted to bribe the police and was arrested.

28.  On or about October 18, 1991, Amendola sent $60,000 in United States currency by Federal Express to an attorney in El Paso, Texas to be used in obtaining NORTHROP's release from jail in Mexico.

29.  On or about November 15, 1991, pursuant to Northrop's instructions, two persons transported approximately 34 pounds of marijuana from El Paso, Texas to New Mexico.

30.  On or about November 25, 1991, a coconspirator possessed approximately 15 pounds of marijuana at an airport terminal in El Paso, Texas.

31.  On or about February 1, 1992, NORTHROP was at Bradley International Airport in Connecticut, wearing a beeper and carrying an airline ticket issued to "Mike Miller" for a flight to El Paso, Texas.

32.  In or about February 1992, NORTHROP arranged for approximately 16 pounds of marijuana to be sent by United States Express Mail to a person at 14A Herman Street, West Haven, Connecticut from El Paso, Texas.

33.  In or about February 1992, NORTHROP arranged for approximately 16 pounds of marijuana to be sent by United States

- 8 -

Express Mail to a person at 285 Seaside Avenue, Apartment 4, Milford, Connecticut from El Paso, Texas.

34. On or about March 2, 1992, NORTHROP possessed approximately nine ounces of cocaine.

35. After March 2, 1992, NORTHROP attempted to hire a person to kill Jonathan Allen who NORTHROP suspected had provided police with information about his drug trafficking organization.

36. After March 2, 1992, NORTHROP attempted to hire a person to kill Officer Keith Mello who arrested him in connection with his possessing approximately nine ounces of cocaine.

37. From in or about late March 1992 to on or about April 7, 1992, NORTHROP travelled to El Paso, Texas and arranged for the purchase of marijuana.

38. On or about April 4, 1992, while discussing the need to use new people in his drug trafficking organization, NORTHROP told Amendola "We gonna probably have to reorganize everything . . . you know what I mean? We have to get some fresh new faces."

39. On or about April 7, 1992, NORTHROP spoke with an undercover United States Customs Service agent, explaining that in exchange for receiving money he could provide a corrupt United States border guard who would permit marijuana to enter the United States from Mexico.

All in violation of Title 21, United States Code, Section 846.

- 9 -

<u>COUNT TWO</u>
(21 U.S.C. § 841(a)(1))

On or about March 2, 1992, in the District of Connecticut,

AARON NORTHROP,

defendant herein, knowingly and intentionally possessed with intent to distribute a quantity of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

- 10 -

## COUNT THREE
(21 U.S.C. § 848)

From in or about the Summer of 1988 and continuing to on or about April 7, 1992, the exact dates unknown to the Grand Jury, in the District of Connecticut and elsewhere,

### AARON NORTHROP

defendant herein, unlawfully, willfully, knowingly, and intentionally engaged in a continuing criminal enterprise in that he committed violations of Subchapters I and II of Chapter 13, Title 21, United States Code, including the violations alleged in count one and the overt acts in count one, and in count two of this Indictment, which counts and overt acts are incorporated by reference herein, as well as other violations of said statutes, all of which violations were part of a continuing series of violations of said statutes undertaken by NORTHROP in concert with at least five other persons with respect to whom NORTHROP occupied a position of organizer, supervisor, and manager and from which continuing series of violations he obtained substantial income and resources.

All in violations of Title 21, United States Code, Section 848.

- 11 -

### COUNT FOUR
#### (26 U.S.C. §§ 5861(c) and (f))

From in or after April 1989 to in or about June 22, 1989, the exact dates unknown to the Grand Jury, in the District of Connecticut,

#### AARON NORTHROP,

defendant herein, together with and aided and abetted by Anthony Amendola, who is not charged as a defendant herein, and others known and unknown to the Grand Jury, knowingly made and possessed a firearm, that is, a destructive device, as those terms are defined in Title 26, United States Code, Section 5845(a), (f), and (i), consisting of black powder, ignitors, a length of PVC pipe, a servo unit, a remote control receiver, and other components and that was made in violation of Chapter 53, Title 26, United States Code.

In violation of Title 26, United States Code, Sections 5822 and 5861(c) and (f), and Title 18, United States Code, Section 2.



- 12 -

## COUNT FIVE
(18 U.S.C. § 1958)

From on or about March 26, 1992 until on or about April 7, 1992, in the District of Connecticut and elsewhere,

AARON NORTHROP,

defendant herein, used and caused others to use facilities in interstate commerce, namely, interstate telephone facilities and a paging device between both Connecticut and Nevada and Connecticut and Texas, with intent that a murder of Jonathan Allen, a person NORTHROP suspected was a police informant, be committed in violation of the laws of the State of Connecticut, as consideration for a promise and agreement to pay money.

In violation of Title 18, United States Code, Section 1958.

- 13 -

## COUNT SIX
### (18 U.S.C. § 1958)

From on or about March 26, 1992 until on or about April 7, 1992, in the District of Connecticut and elsewhere,

### AARON NORTHROP,

defendant herein, used and caused another to use facilities in interstate commerce, namely, interstate telephone facilities and a paging device between both Connecticut and Nevada and Connecticut and Texas, with intent that a murder of Keith Mello, a law enforcement officer with the Milford, Connecticut Police Department, be committed in violation of the laws of the State of Connecticut, as consideration for a promise and agreement to pay money.

In violation of Title 18, United States Code, Section 1958.

- 14 -

## COUNT SEVEN
### (18 U.S.C. § 401(3))

From on or about June 11, 1992 to on or about July 21, 1992, in the District of Connecticut,

AARON NORTHROP,

defendant herein, knowingly disobeyed and resisted an order and command of the United States District Court for the District of Connecticut, in that on June 11, 1992 he appeared before the Court at which time the Court ordered and commanded him to provide handwriting exemplars, and he thereafter refused to provide and did not provide the ordered handwriting exemplars.

In violation of Title 18, United States Code, Section 401(3).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
ALBERT S. DABROWSKI
UNITED STATES ATTORNEY


_____
JOHN H. DURHAM
ASSISTANT UNITED STATES ATTORNEY

_____
ROBERT J. DEVLIN, JR.
ASSISTANT UNITED STATES ATTORNEY

_____
PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY

I hereby certify that the foregoing is a true copy of the original document on file. Date: _____

KEVIN F. ROWE
Clerk

By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET

AO 256A                                      AARON NORTHROP

EXHIBIT

C

| DATE | (Document No.) | PROCEEDINGS (continued) |
|------|------|------|
| 1993 | | |
| 2/16 | 96 | GOVT'S Application for EX PARTE Order to Disclo: Return Inforamtion, fld. (ctb) |
| 2/16 | 97 | GOVT'S Supplement to its third Omnibus response to Deft's Pretrial Motions, (Ctb) |
| 2/17 | 98 | EX PARTE Order Authorizing Disclosure of Returns and Return Information, fld and ent: SO ORDERED. (see order for details) Nevas,J. cc: govt (ctb) |
| 2/17 | 99 | MOTIO: to Seal fld by deft. (ctb) |
| 2/17 | 100 | MOTION fld by deft. (Ctb) UNDER SEAL |
| 2/18 | | DOC #99 END: Granted, So Ordered, Nevas,J. cc:counsel (ctb) |
| 2/18 | | DOC #100 END: Grnated, So Ordered. Nevas, J. cc:counsel (Ctb) |
| 3/2 | 101 | GOVT'S Proposed Voir Dire Questions, fld. (Ctb) |
| 3/8 | | CALL OF THE CALENDAR HELD. trial to commence. Nevas,J. (MOntz,D.C., Catucci,R.) (ctb) |
| 3/8 | 102 | GOVT'S Motion for Protective Order regarding Jencks Act Material. fld. (ctb) |
| | 103 | PROTECTIVE Order regarding Jencks Act Material fld. and ent: the govt's motion is granted and defense counsel is ordered not to disclose to any one other than the deft and those assisting in the defense the contents of a witness' Jencks Act material, except when court is in session concerning this case. the deft. shall also return the Jencks Act materia after the trial. So Ordered. Nevas,J. cc:counsel (ctb0 |
| 3/8 | | JURY TRIAL COMMENCES: Petit jury enters. 58 jurors present. voir dire oath admin. voir dire by court. 26 jurors ex for cause. panel of 32 drawn. Challenges: govt-7; dft.-11; jury of 14 drawn. 2:35- jury enters. One govt witness sworn and test. govt ex 1,2 fld. 5:00 Ct adj. and jury to report at 9:30on 3/9/93. Nevas, J. (Montz,D.C., Catucci,R.) (ctb) |
| 3/9 | | JURY TRIAL CONTINUES: same app. Jury enters. 14 present. Seven govt witnesses sworn and test. Govt ex 3,4,5a,5b,6a-6f,6,7,7a,7b, 7d,7e,8e,8a,8b,8c,8d,8f,8g,8h,8i,8j,8k,8l,8m,8o,8n fld. Defts ex A fld. Jury excused until 3/10/93 at 10:00. Atty ex until 3/10/93 @ 9:30 Ct adj. Nevas,J. (montz,d.c., Catucci,R.) (ctb) (:40-4:49 |
| 3/10 | | JURY TRIAL CONTINUES: Same Appearance. Govt's Memo on Ginger Hermann's testimony, fld. Twelve govt witnesses sworn and test. Govt ex 8e,7f,9a-9n,9,10a,11,11a-11r,12,12a-m,13a-13d13,14,15,16,17,17a, 17b,17c,18a,18b,19a-19e,20a,20b,20c,21 fld. Nevas,J. 9MOntz,D.C., Catucci,R.) (ctb) 9:50-5:00 |
| 3/11 | | JURY TRIAL CONTINUES: 14 Jurors present.5 govt wit sworn and test. Govt exhibits 22,23A-23-c: 24-26A-26D; 27-A 27B & 27 Deft request leave to change his plea. See separate minutes. Exhibits returned to pltfs and deft. Ct adj. NEVAS, J (Montz, DC: Catucci,R) rak 10:50-5:30 |
| 3/11 | 104 | CHANGE OF PLEA:Deft request leave to change plea of not guilty entered earlier to Counts 1-7 Superseding Indictment. Deft sworn by Clerk, Plea agreement ltr filed. Deft put to plea again and pleads GUILTY to counts 1,3,4,5,6 of Superseding Indictment. The court grants request and orders the previous plea erased from the record. The Court enters a finding of GUILTY. INDICTMENT counts 2 & 7 to be dismissed at sentencing |

continued

Interval
(per Section II)

Start Date
End Date

Ltr. Total
Code Days

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET    U.S. vs    AARON NORTHROP

AO 256A

3:92-32 AHN

| Yr. | Docket No. | Def. |

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DELAY |
| | (Document No.) | (a) | (b) | (c) | (d) |
| **1993** | | | | | |
| 3/11 | **CHANGE OF PLEA:** continues---The defendant shall be sentenced | | | | |
| | on May 11, 1993 @ 9:00 a.m. Deft shall remain in custody | | | | |
| 105 | pending sentencing. Waiver and challenge of Grand Jury Claims | | | | |
| | filed. NEVAS, J. (Montz, DC; Catucci,R) rak | | | | |
| 4/13 | CJA 20 (0486202) in amt of $16,349.94 approv. by WWE and sent to | | | | |
| | Sec.Cir. for approval (Ctb) | | | | |
| 4/28 105 | MOTION for competency hearing and examination, fld. (ctb) | | | | |
| 106 | MOTION for Cont. of sentencing date and waiver of time under speedy | | | | |
| | trial act.   fld. (Ctb) | | | | |
| 107 | MOTION for continuance of time to abject to portions of PSR. fld. C9tb) | | | | |
| 108 | EX PARTE request for appointment of clincal psycholgist, 1fd. (ctb) | | | | |
| 5/3 | CJA Form 20 approved in amt of $5,174.66 and sent to sec. cir. (ctb) | | | | |
| 109 | GOVT'S response to deft's Presentencing motions, fld. (ctb) | | | | |
| 110 | CJA Form 20 in amt of $16,349.99 paid and placed in court file. (ctb) | | | | |
| 5/5 | HRG on DEFt's Mental Stability:Oral Argument. Court finds reasonable | | | | |
| | cause to believe the defendant is incompetent to be sentenced | | | | |
| | The court finds need for custodial evaluation The deft shall | | | | |
| | be air lifted to Butner, No. Carolina 2nd week of may for evaluation. | | | | |
| | An order shall enter.  Sentencing to be continued to a date uncertain. | | | | |
| | Motion to continue presentence--granted. NEVAS, J.   rak | | | | |
| 5/5 | DOC #105 END: DENIED as moot.  SO ORDERED, Nevas,J. cc:counsel (Ctb) | | | | |
| | DOC #106 END: GRANTED for the reasons stated on the record. | | | | |
| | SO ORDERED. Nevas,J. cc:counsel (ctb) | | | | |
| | DOC #107 END:  GRANTED. SO ORDERED cc:counsel (Ctb) | | | | |
| | DOC #108 END: Pursuant to court's order directing the Bureau of Prisons | | | | |
| | to conduct a psychiatric or psychological examination of the deft, this | | | | |
| | motion is denied as moot.  SO ORDERED. Nevas,J. cc:counsel (ctb) | | | | |
| 111 | ORDER fld and ent.  The court pursuant to 18:4241(b) and 4244(b) | | | | |
| | orders that the B of P, preferably at FCI Butner, conduct a psychiatric or | | | | |
| | psychological report according to 18:427(b) and (c). (see order | | | | |
| | for details) Nevas,J. copies distrib. (ctb) | | | | |
| 6/7 112 | TRANSCRIPT of hearing held before AHN March 9, 1993 filed.   rak | | | | |
| 6/17 113 | ORDER fld and ent:  The court hereby orders that the period of comprehensive | | | | |
| | EVALUATION BEING CONDUCTED AT THE FCI at Butner, North Carolina is | | | | |
| | hereby extended through 7/4/93. So Ordered. Daly,J. cc:counsel | | | | |
| | (ctb) | | | | |
| *6/1 | CJA Form 20 in amt of $5,174.66 paid and placed in cot file. (ctb) | | | | |
| 7/20 114 | ORDER setting deadlines for sentencing. Deft obj to pSI on or | | | | |
| | before August 9. Probation response on or before Aug 13. | | | | |
| | All Final objections to the PSI by August 18, 1993. Should | | | | |
| | deft need certain witnesses counsel shall notify the govt | | | | |
| | on or before August 18, 1993. Sentencing set for August | | | | |
| | 31, 1993 @11:00 a.m. SO ORDERED. NEVAS. J.cc: attys & Prob. | | | | |
| 8/9 115 | MOTION to extend time for dft to file objs. to pre-sent. report | | | | |
| | fld. Ctb)  (one month) | | | | |
| 8/13 116 | GOVT'S opposition to Dft's Motion to extend time to file objections to | | | | |
| | PSI, fld. (ctb) | | | | |

CONTINUED...

| Interval | Start Date | Ltr. | Total |
| (per Section II) | End Date | Code | Days |

EXHIBIT
D

LEXSEE 1998 U.S. DIST. LEXIS 677

AARON B. NORTHROP v. UNITED STATES OF AMERICA

Case No. 3:92cr32(AHN), 3:96cv836(AHN), 3:97cv712(AHN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1998 U.S. Dist. LEXIS 677*

January 14, 1998, Decided

**DISPOSITION:** [*1]. Northrop's Motion Under U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [doc. # 181] and Motion for Inspection of Grand Jury Lists [doc. # 172] DENIED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** AARON B. NORTHROP, plaintiff (96-CV-836), (97-CV-712), Pro se, White Deer, PA.

**JUDGES:** Alan H. Nevas, United States District Judge.

**OPINIONBY:** Alan H. Nevas

**OPINION:**

RULING ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

On March 11, 1993, after three days of trial in which the Government presented twenty-five witnesses and offered approximately 280 pounds of marijuana into evidence, the petitioner, Aaron B. Northrop ("Northrop"), entered a plea of guilty to conspiracy to distribute marijuana and cocaine, in violation of *21 U.S.C. § 846*; engaging in a continuing criminal enterprise, in violation of *21 U.S.C. § 848*; making and possessing a bomb, in violation of *26 U.S.C. § § 5861(c), (f)*; and using interstate commerce facilities in the commission of a murder-for-hire, in violation of *18 U.S.C. § 1958*. On October 25, 1993, after hearing evidence obtained from a prolonged investigation into Northrop's mental competency by Government and defense experts, the court found Northrop competent [*2] for sentencing. Northrop was sentenced to 600 months' incarceration on the continuing criminal

enterprise count; 120 months' incarceration on each of the other counts, to run concurrently with the 600 month sentence; three years of supervised release; and a special assessment of $ 250. The court also ruled that Northrop would, in the future, be denied federal benefits. On direct appeal, the Second Circuit affirmed the judgment of conviction and the sentence. See *United States v. Northrop, 40 F.3d 1238 (2d Cir. 1994)*.

Now pending before the court are Northrop's Motion Under U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence and Motion for Inspection of Grand Jury Lists. n1 For the following reasons, these motions [docs. # 172, 181] are DENIED.

n1 Northrop originally filed motions to correct and/or modify his sentence in November, 1996, which were assigned to case number 3:96cv836. The court denied these motions without prejudice to renewal because Northrop had made several procedural errors. See *United States v. Northrop, Case No. 3:96cv836(AHN)* (D. Conn. November 14, 1996). Then, in April, 1997, Northrop filed a second habeas petition, which is the subject of this ruling.

[*3]

STANDARD OF REVIEW

"Section 2255 provides a mechanism for federal prisoners to vacate sentences imposed in violation of the laws or Constitution of the United States." *Hardy v. United States, 878 F.2d 94, 96 (2d Cir. 1989)*. The available grounds for relief on a § 2255 motion, however, are more limited than those available on direct appeal. Id.

The four grounds on which a federal prisoner may move the court to vacate, set aside, or correct a sentence are that (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the sentence was greater than the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. See *Hill v. United States, 368 U.S. 424, 426-27, 7 L. Ed. 2d 417, 82 S. Ct. 468 (1962).* Section 2255 does not provide a remedy of "all claimed error in conviction and sentencing." *United States v. Addonizio, 442 U.S. 178, 185, 60 L. Ed. 2d 805, 99 S. Ct. 2235 (1979).* Rather, it is intended to redress only "a fundamental defect" which results in a "complete miscarriage of justice" or an "omission inconsistent with the rudimentary [*4] demands of fair procedure." *Hill, 368 U.S. at 428.*

If the pleadings show that a prisoner is not entitled to relief, the district court may rule on the § 2255 motion without granting a hearing. See *Machibroda v. United States, 368 U.S. 487, 495, 7 L. Ed. 2d 473, 82 S. Ct. 510 (1962).* As the Second Circuit has held, "where a petition omits meritorious allegations that can be established by competent evidence, it would go too far to say that it was error for the district court to have failed to conduct a full evidentiary hearing." *United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990)* (citation and internal quotation marks omitted). A petitioner must allege specific facts to support his claim "which he is in a position to establish by competent evidence," *Dalli v. United States, 491 F.2d 758, 760-61 (2d Cir. 1974)* (citations omitted), and where he fails to do so, the court may dismiss the petition without a hearing upon a determination that the supporting allegations are insufficient as a matter of law. See *Johnson v. Fogg, 653 F.2d 750, 753 (2d Cir. 1981).*

## DISCUSSION

In support of his petition, Northrop makes eight arguments, some of which have multiple [*5] parts. In short, he maintains: (1) this court lacks jurisdiction over him; (2) his guilty plea was involuntarily induced; (3) he had ineffective assistance of counsel; (4) his conviction violated the Double Jeopardy Clause of the Fifth Amendment; (5) his Grand and Petit Juries were unconstitutionally selected and impaneled; (6) the Sentencing Guidelines are unconstitutional; (7) *26 U.S.C. § 5861* is unconstitutional under the Commerce Clause; and (8) his sentence was improperly imposed because, inter alia, he did not read the pre-sentence report or discuss it with counsel, and because the court relied on false information. n2

n2 While the court addresses each of Northrop's claims on its merits, it appears that,

because he raised none of these issues in his direct appeal and has failed to show "cause" for failing to raise them, he is procedurally barred from bringing all of the claims, except the jurisdictional challenge, as part of his habeas petition. See *United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995)* (holding that a defendant who fails to raise a claim on direct appeal is barred from collateral review of the claim on a § 2255 petition unless he can show cause for failing to raise the claim on appeal). Nonetheless, in the interest of judicial economy, the court will address each of Northrop's claims on its merits.

[*6]

For the reasons stated below, the court finds that each of these arguments lacks merit and therefore denies Northrop's § 2255 motion without holding an evidentiary hearing. See *Aiello, 900 F.2d at 534.*

## I. Court's Jurisdiction

Northrop claims that "the federal District Courts in the state of Connecticut are 'legislative' courts and receive no authority, and its judges no rights, from the judicial article of the Constitution." (Pet'r's Mot. Under *28 U.S.C. § 2255* [hereinafter "Pet'r's Mot."] Attach. 1 at 1.) He argues that these courts were created by Congress to give advisory decisions only. (Id.) To the extent that this claim is even comprehensible, it is utterly devoid of merit.

The Constitution provides:

> The judicial Power of the United States, shall be vested in one Supreme Court, and in such other inferior Courts as the Congress may from time to time ordain and establish.

U.S. Const. art. III, § 1. Under *18 U.S.C. § 3231*, district courts have original jurisdiction over all criminal matters arising under the law of the United States. See *18 U.S.C. § 3231* (stating that district courts "have original jurisdiction, exclusive of the courts [*7] of the states, of all offenses against the laws of the United States"); see also *Field v. United States, 193 F.2d 86, 90 (2d Cir. 1951)* (recognizing that "District Courts of the United States have jurisdiction of all offenses against the laws of the United States"). In short, the United States Constitution expressly gives Congress the power to create courts inferior to the Supreme Court. The United States District Court for the District of Connecticut is such a court and therefore has jurisdiction over Northrop's criminal case. n3

n3 To the extent that Northrop claims that the courts in this district lack personal jurisdiction over him (see Pet'r's Mot. Am. Pet. Under *28 U.S.C. § 2255*), this argument also lacks merit. Nothing in the Tenth Amendment or the Fourteenth Amendment to the Constitution, or in the Constitution itself prevents this court from exercising jurisdiction over Northrop in the underlying criminal case. Northrop was indicted for violating federal laws within the boundaries of the State of Connecticut. The United States District Court for the District of Connecticut is the proper forum for his case.

[*8]

## II. Voluntariness of Northrop's Guilty Plea

As the Supreme Court has noted:

> The representations of the defendant . . . at [a plea] hearing . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison, 431 U.S. 63, 73-74, 52 L. Ed. 2d 136, 97 S. Ct. 1621 (1977)* (citation omitted). While the court is not permitted to dismiss entirely a defendant's claim that his statements at a plea hearing were not voluntary, the defendant must present some credible evidence to support his claims of duress. See *United States v. Gonzalez, 970 F.2d 1095, 1100-01 (2d Cir. 1992)*.

The record here speaks for itself. (See Gov't's Opp. Pet'r's Mot. Pursuant to *28 U.S.C. § 2255* [hereinafter "Gov't's Opp.] Ex. 6 [hereinafter "3/11/93 Tr."].) On March 11, 1993, after three days of trial, the court conducted a plea hearing prompted by Northrop's request to change his plea to [*9] guilty on the pending criminal charges. The record shows that the court was extremely thorough in its plea canvas. Northrop was asked numerous questions concerning, inter alia, his desire to plead guilty, his awareness of his rights to present evidence and cross-examine witnesses, his awareness of the charges against him, and whether he had the opportunity to discuss fully those charges with his lawyers. (See 3/11/93 Tr. at 3-7.) In response to the court's question concerning predictions or promises that

were made to him by the prosecutor or by his lawyers about his sentence, Northrop stated that no such promises had been made. (See id. at 24.) Furthermore, the record indicates that the court, based on its lengthy and thorough canvas of the defendant, found that Northrop was competent to enter his guilty plea and that the guilty plea was entered into voluntarily and without any coercion or duress. (See id. at 4, 15, 24.) Therefore, on the face of this record, Northrop's contentions that he was induced into changing his plea to guilty are "wholly incredible." *Blackledge, 431 U.S. at 74*. Northrop entered into the guilty plea after sitting through four days of trial [*10] during which the government presented twenty-five witnesses, including one witness who identified him as the head of a marijuana distribution enterprise and the builder of a bomb to be used in a murder-for-hire plot. There can be no question that Northrop understood the nature of the charges and the evidence against him.

## III. Ineffective Assistance of Counsel n4

n4 Again, the court notes that Northrop's failure to raise this issue on direct appeal, given the fact that he was represented on appeal by new counsel, probably bars him from raising the claim in this habeas petition. See *Billy-Eko v. United States, 8 F.3d 111, 114 (2d Cir. 1993)* (recognizing that an exception to the general rule that failure to bring an ineffective assistance claim on direct appeal does not bar a defendant from raising the claim in a § 2255 motion arises where new appellate counsel represented the defendant, and the claim is solely based on the trial record).

In *Strickland v. Washington, 466 U.S. 668, 80 L. Ed.* [*11] *2d 674, 104 S. Ct. 2052 (1984)*, the Supreme Court held that, to establish an ineffective assistance claim, a defendant must prove that the attorney "made errors so serious" that the representation fell below "an objective standard of reasonableness" and that there is a "reasonable probability" that without such errors, the jury would have had a reasonable doubt as to his guilt. See *id. at 687-88, 695*. The inquiry must focus "on the fundamental fairness of the proceeding whose result is being challenged." *Id. at 696*. The court should not challenge an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options." *Id. at 690-91*. In the context of a guilty plea, to support an ineffective assistance claim, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted

on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).

Nothing in the record supports Northrop's allegations of ineffective assistance of counsel. The court appointed two experienced criminal trial lawyers to represent [*12] Northrop at trial. Attorneys Elton Williams and Richard S. Cramer did an admirable and competent job on Northrop's behalf. They carefully investigated the case (see docs. # 59, 72), filed numerous pre-trial motions (see docs. # 12-27, 43-56, 58, 60-61, 81, 84, 89-93), and, during the four days of trial, thoroughly cross-examined government witnesses and timely objected to questions asked and to evidence introduced by the Government. Furthermore, Northrop's statements during his guilty plea and his presence in court for four days of the government's case strongly undermines his claim that his lawyers failed to provide him with adequate information on which to base his decision to plead guilty.

Lastly, there is no merit to Northrop's claim that his lawyers failed to request a competency hearing for him. The record indicates that the court did, in fact, order an examination of Northrop's mental condition, pursuant to 18 U.S.C. § 4244, and that such an examination was held. In addition, Northrop's counsel requested an examination by an independent psychiatrist, and the court granted this request. Both experts concluded that Northrop was not suffering from a mental illness and [*13] that he was competent to be sentenced. n5

n5 The Second Circuit has already held that the court's decision not to hold a competency hearing did not constitute an abuse of discretion. (See Gov't's Opp. Ex. 4.)

For these reasons, this claim must also fail.

IV. Double Jeopardy

Northrop first claims that the court's imposition of a sentence of incarceration following its $ 10,106.45 forfeiture order in the October, 1988 in rem civil proceedings brought by the Government n6 constitutes a second punishment under the Double Jeopardy Clause of the Fifth Amendment. This claim is without merit.

n6 The forfeiture proceeding related to money and property seized from Northrop's residence by the Statewide Narcotics Task Force on October 12, 1988.

The Supreme Court recently held that in rem civil forfeitures are neither "punishment" [*14] nor "criminal" as those terms are used in the Double Jeopardy Clause. See *United States v. Ursery*, 518 U.S. 267, 135 L. Ed. 2d 549, 116 S. Ct. 2135, 2149 (1996). Thus, because the Supreme Court has recognized that Congress is free to impose both a civil sanction and a criminal punishment for the same act or omission, no Double Jeopardy issue exists with respect to the criminal sentence in this case and the prior in rem civil forfeiture. n7

n7 To the extent that Northrop claims that the $ 10,106.45 civil forfeiture award was excessive under the Eighth Amendment, the court will not address this issue in the context of this § 2255 motion challenging his 1993 guilty plea and sentence. The issue of whether the civil fine is excessive has no bearing on issues relating to his conviction and sentence in this case. A § 2255 motion allows a prisoner to challenge a criminal sentence imposed by the court, not a fine imposed in a civil action.

Next, Northrop argues that the judgment of conviction and sentence in this case constitute [*15] a second punishment under the Double Jeopardy Clause because, in August, 1989, he was convicted in the Connecticut Superior Court of criminal distribution of narcotics and sentenced to one year in prison. This argument also lacks merit. The Double Jeopardy Clause does not protect a defendant from having separate punishments imposed by two different sovereigns. See *Koon v. United States*, 518 U.S. 81, 116 S. Ct. 2035, 2053, 135 L. Ed. 2d 392 (1996) (holding that successive state and federal prosecutions do not violate the Double Jeopardy Clause).

Finally, Northrop claims that the inclusion of both a conspiracy to distribute marijuana and cocaine count and a continuing criminal enterprise count violates the Double Jeopardy Clause. However, at sentencing, the court merged these two counts into one and only one sentence was imposed for the two counts. This approach, in which the lesser included offense is merged with the greater, has been approved by the Second Circuit. See *United States v. Aiello*, 771 F.2d 621, 632-34 (2d Cir. 1985); see also *United States v. Lindsay*, 985 F.2d 666, 671 (2d Cir. 1993) (holding that the Government can indict two offenses, even if one is a lesser [*16] included offense of the other). n8 Thus, no double jeopardy violation occurred.

n5 In *Rutledge v. United States, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996),* the Supreme Court rejected the Seventh Circuit's method for sentencing a defendant who has been convicted of two counts, one which is the lesser included offense of the other. This method allowed for the entry of judgment and sentencing on both counts. *116 S. Ct. at 1250-51.* Contrary to Northrop's claim, the Rutledge decision gives additional support to the Second Circuit's method which merges the two counts into one and imposes one sentence.

## V. Selection and Impaneling of Grand and Petit Juries

Northrop next claims that his conviction was obtained by an unconstitutionally impaneled grand jury and petit jury. This claim is, however, barred. The record in the underlying proceedings indicates that Northrop consulted with his lawyers regarding, inter alia, the effect of a waiver and that he did, in fact, waive this claim [*17] by (1) signing the plea agreement, which specifically stated that by entering into the agreement he was waiving any challenge to the jury selection process; (2) signing a written waiver of his right to challenge the composition of the grand or petit jury in his case; and (3) stating to the court that he was waiving such a challenge. (See 3/11/93 Tr. at 23.)

Moreover, even if Northrop had not made such waivers, this claim would still fail because he has not made the requisite prima facie showing to support a jury composition challenge. In order to make such a showing, the defendant must prove:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*United States v. Rioux, 97 F.3d 648, 654 (2d Cir. 1996)* (citation omitted). Northrop has not come forward with evidence establishing any of these elements. He has not even alleged that there is a cognizable [*18] group that was excluded from the jury selection process. Accordingly, this claim must fail. Further, in light of the fact that the challenge to the composition of the grand and petit juries lacks merit, Northrop's Motion for

Inspection of Grand Jury Lists [doc. # 172] is also DENIED.

## VI. Constitutionality of Sentencing Guidelines

In *Mistretta v. United States, 488 U.S. 361, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989),* the Supreme Court considered delegation of power and separation of powers arguments similar to those that Northrop makes here. The Court held:

Congress neither delegated excessive legislative power nor upset the constitutionally mandated balance of powers among the coordinate Branches... . Our system of checked and balanced authority [does not] prohibit Congress from calling upon the accumulated wisdom and experience of the Judicial Branch in creating policy on a matter uniquely within the ken of judges. Accordingly, we hold that the [Sentencing Guidelines are] constitutional.

*Id. at 412.* Other constitutional challenges to the Sentencing Guidelines have similarly failed. See, e.g., *United States v. Vizcaino, 870 F.2d 52 (2d Cir. [*19] 1989)* (rejecting due process challenge); *United States v. Gonzales, 922 F.2d 1044 (2d Cir. 1991)* (rejecting Eighth Amendment challenge); *United States v. Jackson, 968 F.2d 158 (2d Cir. 1992)* (rejecting vagueness challenge). Therefore, Northrop's challenge is rejected.

## VII. Constitutionality of 26 U.S.C. § 5861

Northrop next contends that the statute prohibiting the making or possession of an unregistered destructive device is unconstitutional under the Commerce Clause of the Constitution. However, numerous courts have already held that Congress did not exceed its power to regulate interstate commerce by enacting 26 U.S.C. § 5861. See, e.g., *United States v. Pearson, 8 F.3d 631, 633 (8th Cir.)* (stating that "Congress reasonably concluded that mere possession of firearms threatens the lives and safety of law enforcement officials and the public at large"), cert. denied, *511 U.S. 1126, 114 S. Ct. 2132, 128 L. Ed. 2d 863, reh'g denied, 512 U.S. 1247, 114 S. Ct. 2772, 129 L. Ed. 2d 885 (1993); United States v. Hale, 978 F.2d 1016 (8th Cir.),* cert. denied, *507 U.S. 997, 113 S. Ct. 1614, 123 L. Ed. 2d 174 (1992); United States v. Dodge, 61 F.3d 142 [*20] (2d. Cir.),* cert. denied, *516 U.S. 969, 116 S. Ct. 428, 133 L. Ed. 2d 343 (1995); United States v. Giannini, 455 F.2d 147 (9th Cir. 1972).* Based on these decisions, and absent any proffer by Northrop other than his unsupported allegation that

the statute is unconstitutional, the court denies Northrop's Commerce Clause challenge.

VIII. Additional Claims

Lastly, Northrop makes a number of allegations concerning information on which the court relied when it sentenced him. (See, e.g., Pet'r's Mot. at 19 (stating that the judge relied on materially false and unreliable information).) These unsupported allegations have no basis in law or fact and therefore can therefore be dismissed summarily. n9

n9 One claim that Northrop makes is that he was unable to read and discuss the pre-sentence report with his lawyers. The record of both the sentencing hearing and the October 14, 1993 status conference clearly shows the lengths to which his attorneys and the court went to insure that Northrop read and understood the pre-sentence report. In fact, during the sentencing hearing, one of his attorneys stated that he had gone to the prison to read the report to Northrop, but that Northrop walked out of the room after he read only two-thirds of the report. Subsequent to finding, based on the experts' reports, that Northrop was competent to be sentenced and noting that Northrop repeatedly refused to read the pre-sentence report or to allow his attorneys to read it to him, the court made a finding that Northrop waived his right to read the report.

[*21]

CONCLUSION

For the reasons stated above, Northrop's Motion Under U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence [doc. # 181] and Motion for Inspection of Grand Jury Lists [doc. # 172] are DENIED.

In addition, the court determines that the petition and motion present no question of substance for appellate review, and that the petitioner has failed to make a "substantial showing" of denial of a federal right. See *Barefoot v. Estelle, 463 U.S. 880, 893, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983);* see also *Rodriquez v. Scully, 905 F.2d 24 (2d Cir. 1990).* Accordingly, a certificate of appealability will not issue, and the Clerk of the Court is directed to close this case.

SO ORDERED this 14th day of January, 1998 at Bridgeport, Connecticut.

Alan H. Nevas

United States District Judge

From: Aaron Northrop
Reg. No: 61713-080
Lompoc U.S. Penitentiary
3901 Klein Boulevard
Lompoc, CA 93436

EXHIBIT
E

Date: December 11, 2002

Dear Mr. Yolen,

It is unfortunate that you have disposed of the documents that I need to collect the debt owed to me by Mr. Vaillancourt. I hope that you can assist me in locating the documents that I need through the courts, and that your memory on the matter is clear. Otherwise I am going to have to sue you for the amount owed, which is over $160,000.00. As an attorney you were required to keep those documents safe. See, Rule 1.15 of the ABA Rules of Professional Conduct. The contracts that you were holding were made in 1989, and had a five year life span. I had until 2001 to collect the debts owed to me on those contracts. This means that you were at a minimum, required to keep those documents safe until the statute of limitations ran out on the contracts. You were also required to serve me notice and send me a copy of those documents before disposing of them. Hopefully there is a record of those documents filed with the court, or Secretary of the State. If so, please locate them and send me a copy immediately. I would also appriciate an affidavit from you verifying the existance of the contract, and the terms of the contract as you remember them. Please send me a letter and let me know what your position is on this matter.

Additionally, I want you to know that I have no intention of cheating you out of any money that may be owed to you by

1

the corporation. If I had the money you would have been paid by now. However, the government took whatever money I had, and I don't have an income. If I get a judgment against Mr. Vaillancourt, I'll make sure that you get some of the money that is collected. That is all that I can promise. Hopefully you will help.

Yours truly,

Aaron Northrop