Karl Vaillancourt
Defendant, Pro Se
29 State Street
North Haven, CT 06473

FILED

2005 AUG 22 A 11: 47

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

Aaron Ben Northrop, )
     Plaintiff, )
               )
               )
v.            )         Case No. 3:01-CV-364 (AVC)
               )
               )
Karl Vaillancourt, )        August 18 , 2005
     Defendant. )

## DEFENDANT'S MOTION TO STRIKE, OBJECTION AND MEMORANDUM REGARDING PLAINTIFF'S SECOND APPLICATION FOR REPRESENTATION OF COUNSEL AND FIRST MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

Now comes Karl Vaillancourt, the defendant in the instant action and, pursuant to Fed. R. Civ. P. 7, responds to this Court in regard to the plaintiff's second application for representation of counsel and first motion for writ of habeas corpus ad testificandum.

## BACKGROUND

Plaintiff filed his first application for representation of counsel on November 3, 2003. Docket Entry No. 59.

Defendant filed his response and objection to plaintiff's first application on November 7, 2003. Docket Entry No. 60.

The Court denied, without prejudice to re-filing, the plaintiff's first application on

1

November 17, 2003 (Docket Entry No. 61) by way of an Endorsement to Docket Entry No. 59. The Court denied such on the grounds that the application did not demonstrate plaintiff could not obtain counsel on his own, nor did it address the other factors to be considered by the Court, as set forth in *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986) cert. denied sub nom., *Hodge v. Colon*, 502 U.S. 986, 112 S.Ct. 596 (1991).

Plaintiff filed his second application for representation of counsel and first motion for writ of habeas corpus ad testificandum on August 15, 2005. Docket Entry No. 109. Defendant now moves to strike, and alternatively, responds and objects to this second application and first motion for writ of habeas corpus ad testificandum.

## MOTION TO STRIKE

The plaintiff's filing fails to address each of the factors set forth in *Hodge*, despite this Court's specific direction as to the standards to be met. The standards were thoroughly enumerated for the parties in the Court's denial without prejudice of the plaintiff's first application in November of 2003.

For this reason, the defendant moves to strike plaintiff's second motion for application of counsel.

## RESPONSE AND OBJECTION

## FACTS

1.    Defendant does not, as of this date, have representation.

2.    The plaintiff is seeking restoration to himself of drug sale proceeds. See affidavit of Connecticut State Trooper Thomas R. Murray at 5[1], dated April 15, 1997, appended to Plaintiff's Objections to Defendant's Motions to Dismiss, dated June 30,

---

[1] "Northrop had funded MAGNA with $120,000 that were proceeds from their [referring to

2003, Docket Entry No. 45; Admission of Northrop in pleading guilty to Counts One and Three of the Superseding Indictment, Overt Act 13 at page 4, Grand Jury N-91-2, *USA v. Northrop*, 3:92-CR-32 (AHN); *Northrop v. USA*, 1998 U.S. Dist. LEXIS 677 *1, *8-10; Proof of Claim at page 2, *Plaintiff's First Motion for Default Judgment*, dated June 10, 2002, Docket Entry No. 13; Interrogatory 12, *Plaintiff's First Set of Interrogatories to Defendant*, dated May 4, 2002, copy appended to *Defendant's Motion to Quash or For Protective Order*, dated September 5, 2003, Docket Entry No. 54.

3.     The plaintiff is not in possession of the promissory note and has not established his entitlement to enforce the note as a lost instrument. See Docket Entry No. 22, April 7, 2002; Docket Entry No. 80, August 27, 2004.

4.     Plaintiff has twice represented to this Court in signed pleadings that the claimed extension agreement was entered into in 1995. *Plaintiff's two motions for default judgment*, dated June 10, 2002, and June 16, 2003, Docket Entry No.'s 13 and 23.

5.     Plaintiff has barely machinated a disputed material fact to avoid dismissal by adjusting the date of the claimed extension agreement to March of 1992 in a sworn affidavit to this Court. Appended to *Plaintiff's Response and Objection to Defendant's Motion to Strike Plaintiff's Motion for Default Judgment*. Docket Entry No. 45.

6.     The promissory note was made on February 8, 1990 and matured on February 8, 1995. *Promissory Note*, attached to plaintiff's second motion for default, dated June 16, 2003, Docket Entry No. 23.

7.     Plaintiff admitted that he had only until the anniversary date (February 8) in 2001 to file suit, and thereby acknowledged that no extension agreement with regard to

Northrop and Amendola's] drug trafficking."

3

the note between the parties existed in his correspondence dated December 11, 2002. to

Attorney Timothy Yolen. Appended to Docket Entry No. 81 as Exhibit E.

8.     The plaintiff filed suit on March 7, 2001. *Complaint*, Docket Entry No. 2.

9.     There is no need for expert testimony in this case and none is suggested by

the parties' trial memoranda.

10.     All pertinent facts have already been gathered by the parties and discovery

is closed.

11.     This case does not involve complex matters of law and procedure.

12.     Plaintiff has access to a typewriter, a law library and "jailhouse counsel."

13.     Plaintiff has instituted nine (9) *pro se* civil actions before this district from

prison, has filed appeals with the Second Circuit on at least three (3) occasions, has been

litigating in his own behalf for more than ten (10) years, appears well-schooled in civil

procedure, legal research and pre-trial motions practice, and has litigated a complex

multi-party legal malpractice case against parties with counsel, as follows:

| Mo./Yr. | Description & Key Filings | Docket No. |
|---|---|---|
| 5/95 | Instituted Motion for Return of Property under 18 USC §41(e); appeal to the 2nd Circuit No. 96-1475; appeal sustained on procedural grounds (9/22/97) by Summary Order. Lost on summary judgment at District Court. | 3:92-CR-00032(AHN) |
| 5/96 | Instituted his first §2255 action to vacate or correct an illegal sentence; renounce guilty plea. | 3:96-CV-00836(AHN) |
| 4/97 | Instituted his second §2255 action. | 3:97-CV-00712(AHN) |
| 8/99 | Instituted his third §2255 action. | 3:99-CV-01571(AHN) |
| 5/00 | Instituted his fourth §2255 action. | 3:00-CV-00830(AHN) |
| 3/01 | Instituted present suit v. Vaillancourt to collect on promissory note. | 3:01-CV-00364(AVC) |
| 5/02 | Instituted malpractice suit vs. lawyers Williams and Cramer re: representation at criminal trial in 1992-1993; extensive motions; amended complaints; motion to consolidate with 3:03-CV-00351SRU; defendants represented by counsel; | 3:02-CV-00875(AWT) |

| | motion to expedite case filed to preserve his 9th Circuit appeal; currently on appeal to 2nd Circuit. | |
|------|------|------|
| 9/02 | Instituted 42 USC §1983 suit vs. USA; filed Notice of Appeal; CA2 #02-0343; dismissed; w/o merit. | 3:02-CV-01581(AHN) |
| 2/03 | Instituted 42 USC §1983 suit vs. USA; filed Notice of Appeal; CA2 #03-0143; dismissed; w/o merit. | 3:03-CV-00351(SRU) |

Source: U.S.D.C. Dockets & www.tourolaw.edu/2ndCircuit/September97/s96-14750.htm.

In addition, the plaintiff has been quite active in filing six (6) *pro se* actions with regard to prison conditions, transfers, and treatment before the District Court for the Central District of California, and has a pending appeal before the Ninth Circuit Court of Appeals, as follows:

| Date | Description & Key Filings | Docket No. |
|------|------|------|
| 03/20/00 | Aaron Ben Northrop v. USA Inc, et al; habeas; dismissed w/o prejudice. | 2:00-cv-02794-R-MAN |
| 08/03/00 | Aaron B Northrop v. Federal Bureau of Prisons; habeas; dismissed w/o prejudice. | 2:00-cv-08341-UA-MAN |
| 11/29/00 | Aaron Ben Northrop v. United States, et al.; habeas; dismissed w/o prejudice. | 2:00-cv-12596-R-MAN |
| 01/05/01 | Aaron Northrop v. Warden, U.S.P., Lompoc, et al.; habeas; dismissed w/o prejudice. | 2:01-cv-00169-R-MAN |
| 06/14/01 | Aaron B Northrop v. Al Herrera; habeas; dismissed w/o prejudice. | 2:01-cv-05289-R-MAN |
| 09/02/04 | Aaron Northrop v. Fed. Bureau of Prisons, et al.; habeas; dismissed w/o prejudice; appeal pending in the 9th Circuit Court of Appeals. | 2:04-cv-07342-UA-MAN |

Source: U.S.D.C. Dockets.

The plaintiff has therefore filed no less than fifteen (15) *pro se* civil actions since his conviction was upheld by the Second Circuit.

14.    The plaintiff's practices in this case, as well as others, indicate his capabilities to read and write in English, to comprehend written legal materials, to understand sophisticated legal standards, to understand the import of statutes, and to understand the meaning of court decisions. See Tables at 13 above, and documents filed under the various dockets referenced.

15.    The plaintiff has ably litigated this case for more than four years without assistance.

16.    The plaintiff has cited Connecticut case law in pre-trial pleadings in this case,[2] and in at least one other pro se proceeding before this district as well.

## LEGAL STANDARDS

### I. Generally:

The authorizing statute, 28 U.S.C. §1915(e)(1) provides, "[t]he court may request an attorney to represent any person unable to afford counsel."

In a civil case, courts cannot actually "appoint" counsel for a litigant. Rather, in appropriate cases, the court submits the case to a panel of volunteer attorneys. The members of the panel consider the case and each decides whether he or she will volunteer to represent the plaintiff. If no panel member agrees to represent the plaintiff, there is nothing more the court can do. See, generally, *Mallard v. United States District Court*, 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989).

There is no constitutionally protected or statutory right to counsel in federal civil cases, so long as one is not denied "meaningful" access to the courts. *Id.*; *Hodge v. Police Officers*, supra, at 60-62.

Meaningful access does not include assistance in a civil suit against a non-governmental party. Inmates must be afforded access to court to file a direct appeal, a petition for writ of habeas corpus or a civil rights action challenging the denial of a basic constitutional right. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."

---

[2] See Plaintiff's Objection and Motion to Strike Defendant's Late Answer, Docket Entry No. 44,

_Lewis v. Casey_, 518 U.S. 343, 355 (1996).

## II. Resources:

"Volunteer lawyer time is a precious commodity. Courts are given a major role in its distribution. Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." _Cooper v. A. Sargenti Co._, 877 F.2d 170, 172 (2d Cir. 1989) (per curiam).

Simply because a complaint may survive a motion to dismiss or a motion for summary judgment does not mean that a case warrants allocation of the scarce resource of volunteer-lawyer time. _Ferrelli v. River Manor Health Care Ctr._, 323 F.3d 196, 205-06 (2nd Cir. 2003).

More than 22,000 prisoner civil rights cases were filed in 2001, and the number continues to grow each year as we go forward. Federal Judicial Center, _Federal Court Cases: Integrated Data Base, 1970 –2000_ (ICPSR Study No. 8429, last updated Apr. 25, 2002). Courts must consider the vast number of prisoner actions filed each year in the federal courts, the lack of funding to pay appointed counsel, and the limited supply of competent lawyers who are willing to undertake indigent representation without compensation. Howard S. Eisenberg, _Rethinking Prisoner Civil Rights Cases_, 17 S.Ill.L.J. 417, 462-66 (1992).

## III. Discretion:

Broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision. _Miller v. Pleasure_, 296 F.2d 283, 284 (2d Cir. 1961),

---

July 7, 2003, at page 4, where plaintiff cited _Buckley v. Buckley_, 144 Conn. 403 (1957).

cert. denied, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962).

A court, however, must exercise its discretion in accordance with sound legal principles, and its decision is subject to review for abuse of that discretion.  See *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975); *Jenkins v. Chemical Bank*, 721 F.2d 876, 879 (2d Cir. 1983).

Only if it appears that an indigent plaintiff with a claim of arguable merit and some likelihood of success is incapable of presenting his or her case, should serious consideration be given to appointing counsel. See, e.g., *Gordon v. Leeke*, 574 F.2d 1147, 1153 & n. 3 (4th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

## IV. Ability to Obtain Counsel:

The court's first inquiry is whether plaintiff can afford to obtain counsel.  See *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994).

"[T]he court [should also] . . . require the *pro se* to specify what efforts he has made in an attempt to obtain counsel himself." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). "Such a showing should include a list of the lawyers and organizations contacted, so that the court can be sure that the reluctantly *pro se* party has done his part before the court discharges its duty." *Hodge*, supra at 61.

## V. Merit and Likelihood of Success:

If the court is satisfied that the party making application cannot afford counsel, and has made reasonable efforts to obtain counsel on his own, then the court should look to the "likelihood of merit" of the underlying dispute. *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *Cooper*, supra, 877 F.2d at 174.  Even though a claim may not

be characterized as frivolous, counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor. *Id.* at 172.

In *Jenkins v. Chemical Bank*, the court of appeals held that under the predecessor statute, "an attorney need [not] be appointed in every case which survives a motion to dismiss. . . . Plaintiff's ability to gather and present crucial facts should be heeded, as should the complexity of the legal issues raised in the complaint." *Jenkins*, supra, 721 F.2d at 880 (citing *Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir.), cert. denied, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983)).

"[M]ere bald assertions . . . [that] technically put a fact in issue and suffice to avert summary judgment" are insufficient to provide a basis for appointment of counsel. *Cooper*, *supra*, at 172. The Circuit reiterated the importance of requiring indigent litigants seeking appointed counsel "to first pass the test of likely merit." *Id.*, at 173.

**VI. Hodge and Maclin:**

Although some circuits follow the "exceptional circumstances" rule, the Second Circuit does not; and rightly so. The rule should be intended to provide "meaningful access" to worthy litigants who possess worthy claims.

The leading Second Circuit case of *Hodge* provides generalized criteria for district courts to evaluate when considering an application for appointment of counsel. District courts are instructed to consider: (1) the indigent's ability to investigate the crucial facts; (2) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (3) the indigent's ability to present the case; (4) the complexity of the legal issues involved; and, (5) any special reason in the

9

case why appointment of counsel would be more likely to lead to a just determination. *Hodge*, supra, at 61-62.

*Hodge*, however, counsels for courts to review the totality of the circumstances to weigh whether appointing counsel is or is not appropriate on a case-by-case basis. *Hodge*, supra, at 60.

The case of *Maclin v. Freake*, 650 F.2d 885 (7th Cir. 1981) (per curiam), established similar standards for appointing counsel. According to *Maclin*, courts must consider: (i) the merits of the litigation, (ii) the nature of the factual issues the claim presents, (iii) whether the case turns on credibility, (iv) the parties' ability to present the case, (v) whether the legal issues presented are complex, (vi) whether appointment of counsel will lead to a quicker and more just result, and (vii) the parties' efforts to obtain counsel.

Some courts, as well as legal scholars, are trending away from these two multi-faceted tests, as they logically find their components becoming interdependent on one another, and collapsing of their own weight. For instance, the merits are at least facially addressed at the outset in motions, items (ii) and (v) of *Maclin* are determinative of item (iv), and almost all cases going to trial turn on the credibility of witnesses (assuming that courts properly sift out the bad factual cases). The Seventh Circuit has drastically simplified its standard for consideration of such applications. "Given the difficulty of the case, is the plaintiff competent to try the case himself and, if not, would the presence of counsel make a difference in the outcome?" *Jackson v. County of Maclean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992).

**VII. Plaintiff's Skill and Experience:**

A court may take note of a petitioner's past performance presenting motions, briefs and other papers to the court. See, e.g., _Jackson v. Dallas Police Dep't_, 811 F.2d 260, 262 (5th Cir. 1987) (noting pro se plaintiff did "very credible job" presenting case and papers); see also _Terrell v. Brewer_, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting courts may consider whether plaintiff demonstrates sufficient writing ability to articulate claim).

The Seventh Circuit case of _Farmer_ is instructive of "litigant experience" analysis utilized in the "application for representation" context:

> "When Farmer moved for counsel in April 1991, a week before trial, she had been litigating since February 1988 and had prosecuted a successful appeal to this court. The trial itself promised to be a straightforward swearing contest, the only issue being whether Farmer had or had not requested treatment. There were no legal issues and none of those 'pitfalls that confront laymen in dealing with nonintuitive procedural requirements applied in a setting of complex legal doctrine' that led us to reverse a district judge's refusal to request a lawyer for a prisoner plaintiff in _Hughes v. Joliet Correctional Center_, 931 F.2d 425, 429 (7th Cir. 1991)."

_Farmer v. Haas_, 990 F.2d 319, 322 (7th Cir. 1993).

Further, courts in this circuit regularly require an explanation as to why the applicant cannot litigate the matter on their own. _Campbell v. Home Depot U.S.A., Inc._, 03 Civ. 1421 (JSR) (HBP), April 10, 2002 (S.D.N.Y. 2002) (Memorandum Opinion).

## ARGUMENT

**I. Insufficiencies of The Application:**

The plaintiff's second application merely addresses one factor of the five-factor _Hodge_ test, and ignores all four others. Even plaintiff's attempt to address the obtaining

11

of counsel is somewhat weak. He demonstrates only that his mother sent out a generic letter or e-mail, with no documentation to show that the law firms in question were addressed, or that they ever received them. There are no denial letters attached to the application, in spite of a direct request for such in the generic solicitation letter. At best, plaintiff's offering shows that some research of local law firms was done, and possibly, veiled attempts were made to secure counsel.

Based on the failure to address all of the other _Hodge_ factors, and based on the weakness of the effort apparently made to secure counsel privately, defendant suggests the application should be denied.

## II. Prejudice:

A criterion that is almost completely missed in the discussion of appointing counsel to represent an indigent is the subject of prejudice to the opposing party. The _Hodge_ standard takes into account the criteria that the applicant should not receive assistance from the court unless his case is substantially prejudiced by the lack of counsel. It does so by looking to the applicant's ability to present his case, and to any special circumstances in the case which militate in favor of appointment to achieve a just result. The standard almost assumes that every non-indigent litigant can afford counsel. Such is definitely not the case. Defendant has contacted more than six attorneys in attempts to secure counsel for this matter. Each wanted a retainer in excess of $5,000 to become involved in a federal case. Hence, the defendant remains unrepresented and forced to conduct this case on his own.

Since the plaintiff and the defendant are both _pro se_ in this matter, the plaintiff is not at any significant disadvantage in conducting his case without counsel. In fact, the

appointment of counsel for plaintiff would be prejudicial to defendant and give plaintiff an unfair advantage over him. It is completely fair for plaintiff to remain *pro se* and such in no way would deny him meaningful access to the court.

### III. Merits and Likelihood of Success:

#### A. Credibility:

The plaintiff's credibility is dubious at best. One need only look at the indictment filed in his criminal case.

In 1989, plaintiff made a pipe bomb at his house with the intention of murdering a suspected informant in regard to his Connecticut drug crime prosecution for distributing cocaine. Admitted in his guilty plea.

Northrop filed a false police report in December of 1990 claiming that a Jeep Cherokee he had rented had been stolen. Northrop had actually traded the vehicle for drugs in Chihuahua, Mexico, earlier in that same month. Northrop pulled the same maneuver in February of 1991 with regard to a rented Ford truck. Admitted in his guilty plea.

In 1991, Northrop bribed a U.S. Customs Service border guard in order to facilitate the transportation of drugs across the border with Mexico. He later tried to sell information about this corrupt border guard to an undercover agent of the Customs Service. Admitted in his guilty plea.

The plaintiff intended to have two people murdered in early 1992 and have them buried in concrete. The plaintiff fled the jurisdiction while on bail. The plaintiff continued to traffic in drugs after his March 2, 1992 arrest. Detailed in news articles.

Judge Nevas, in ruling on Northrop's second §2255 motion (3:97-CV-

00712(AHN)), found his claims and representations to the court in regard to the circumstances of Northrop's plea to be "wholly incredible." *Northrop v. USA*, 1998 U.S. Dist. LEXIS 677, *9.

More directly, the plaintiff was in jail for the vast majority of March of 1992, and in the small increment of time that he wasn't in jail, he was running from the law or attempting to break the law further in Nevada and Texas. The plaintiff's claim of an extension agreement at any time is blatantly unfounded. Further, the plaintiff himself in signed pleadings twice told this Court that the purported extension agreement was made in 1995, when he was undeniably in federal prison in Atlanta. Finally, the plaintiff's own correspondence to Attorney Yolen betrays his lie; showing that in 2002 (a year and nine months after this suit had been filed), plaintiff knew that no extension agreement had ever existed. These instances are all clearly probative of the truth of the matter.

Even if this matter goes to trial, the plaintiff's chances of prevailing are paper thin. In a swearing contest, the truth will be found and the defendant will prevail. Such makes this case uniquely unfit for the appointment of counsel.

**B. Standing:**

The plaintiff is not the owner, nor is he the holder, of the note which is the subject matter of this suit. The proceeds the plaintiff lent were drug monies. It has been admitted in open court by plaintiff in the context of his guilty plea to Counts One and Three of the Superseding Indictment at his criminal trial that the MAGNA enterprise was started with drug monies. The plaintiff has also admitted that the note in question was part of the formation of MAGNA. The plaintiff clearly lacks standing to sue in this case. The plaintiff's case should be dismissed for lack of standing to sue over the subject

matter. See 21 U.S.C. §881(a)(6), (c) and (h); Conn. Gen. Stat. § 42a-3-309.

In fact, *Hodge* contained an analogous situation. Hodge's criminal violation had the potential to obviate his civil rights claim of wrongful treatment by police. This is why the circuit instructed the trial court, "[i]n making this determination, the district court should also examine the records of Hodge's criminal trials to see if the issues litigated or evidence produced in those proceedings affect the substantiality of Hodge's civil rights claim." *Hodge*, 802 F.2d at 62. This Court should do the same in this case.

The plaintiff's lack of any legally cognizable or protectable interest in the subject matter makes this case uniquely unfit for the appointment of counsel.

**C. Subject Matter Jurisdiction:**

Even if the plaintiff's claim of an extension were true, the purported extension agreement lacks consideration and is invalid as a matter of Connecticut law. *Thermoglaze, Inc. v. Morningside Gardens Co.*, 23 Conn. App. 741, 745, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991); *State National Bank v. Dick*, 164 Conn. 523, 529-30, 325 A.2d 235 (1973).

Such makes the plaintiff's true amount in controversy for jurisdiction purposes $61,544.95, or the amount of the note at maturity on February 8, 1995. Prejudgment interest is excluded from the amount in controversy. *Springstead v. Crawfordsville State Bank*, 231 U.S. 541, 542, 34 S.Ct. 195 (1913). Furthermore, prejudgment interest, as an element of damages, may only be awarded by the trial court when equitable considerations deem that it is warranted. Such interest is not a matter of right at Connecticut law. *Nor'easter Group, Inc. v. Colassale Concrete, Inc.*, 207 Conn. 468, 482, 542 A.2d 692 (1988). Since Northrop had no right to the monies he claims to have

lent in the first instance, he can not be equitably entitled to interest upon it.

The diversity jurisdiction statute commands that the Court has no jurisdiction unless there is diversity of citizenship and an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. §1332(a). Where the availability of interest as damages is the basis of federal jurisdiction, **special scrutiny is triggered**, and courts should then scrutinize the claim to ensure that it has a basis in law and fact. *Zahn v. International Paper Company*, 469 F.2d 1033, 1033 n. 1 (2d Cir. 1972), aff'd on other grounds, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (Emphasis added).

"For purposes of calculating the jurisdictional amount a federal court may not look to any amount claimed as interest by the plaintiff which is attributable solely to a delay in payment or to a wrongful deprivation of funds. Such moratory interest, where not an essential ingredient of plaintiff's claim, is interest which has accrued prior to the filing of the complaint and, under the rule of this circuit and others, will be excluded from calculations of the jurisdictional amount." *Rafter v. Newark Insurance Co.*, 355 F.2d 185, 186 (2d Cir. 1966), cert. den., 385 U.S. 828, 87 S.Ct. 60, 17 L.Ed. 63 (1966); *Athan v. Hartford Fire Insurance*, 73 F.2d 66 (2d Cir. 1934); *Regan v. Marshall*, 309 F.2d 677 (1st Cir. 1962).

Because the plaintiff's true claim for diversity jurisdiction purposes is less than the required amount in controversy, this Court lacks subject matter jurisdiction. Such makes this case uniquely unfit for appointment of counsel.

**E.     Summary:**

The plaintiff's case is razor thin. He is highly unlikely to prevail on the merits. He has barely created a dispute as to a material fact. Appointment of counsel for the

plaintiff would be a waste of a precious asset. There are others standing in line for such assistance that are suffering from deplorable conditions, and the deprivation of rights. These others are far more worthy of such assistance than plaintiff is.

## IV. Status and Complexity of This Case:

Discovery in this case was completed on June 2, 2003. Scheduling Order, Docket Entry No. 20. All of the pertinent facts and documents have been gathered by the parties. There is no further investigation to be conducted, and therefore, appointment of counsel is unnecessary for this purpose.

This case is not complex. There will be no legal issues to litigate, as the plaintiff, defendant and the Court have litigated them in advance. No expert testimony will be required on a matter of art or science. Assuming it goes to trial, it would be a simple swearing contest concerning plaintiff's standing, and the validity and existence of the claimed extension agreement; both hinge on a simple fact-based inquiry.

This case is nearly identical to the Seventh Circuit's case in *Farmer*. The plaintiff has been litigating this case for more than four years, he has been able to sufficiently convey his claim to the Court through papers, trial comes down to a simple swearing contest, and trial would not involve "pitfalls that confront laymen in dealing with non-intuitive procedural requirements applied in a setting of complex legal doctrine."

Like the *Farmer* court did in its case, this Court should deny plaintiff's application for representation of counsel.

## V. Plaintiff's Resources and Experience:

The plaintiff has a reasonable command of the English language, has access to a

typewriter, photocopier, a law library (with internet access available to its staff), a postal service and access to jailhouse counsel. He has massive amounts of free time to conduct his new vocation as a *pro se* litigator. He has all of the resources one could ask for at his disposal. He has meaningful access to the courts.

The plaintiff has filed fifteen *pro se* federal actions and has been litigating in his own behalf for more than 10 years on what appears to be a full-time basis.

If there is any doubt about the plaintiff's acquired abilities and tenacity, one need only review the docket and filings in his legal malpractice case against attorneys Williams and Cramer. In that case, he has filed three complaints, several complex motions, withstood motions to dismiss, and battled against parties represented by counsel. His response, filed December 8, 2003, to a motion for summary judgment on collateral estoppel/res judicata grounds is a good example of the high level of plaintiff's self-representation abilities.

Northrop begins his response by placing material facts in dispute. He then proceeds to demonstrate a thorough understanding of collateral estoppel and res judicata. He impugns the defendant attorneys and Judge Nevas as fraudulent and deleterious fiduciaries that owed him a duty of care. He invokes Fed. Crim. Rule 11, predicate offense theory, extrinsic fraud and collusion concepts in suggesting the void nature of the criminal judgment against him.

Interestingly, plaintiff also cites substantive Connecticut case law in the above-referenced response at page 5, noting fiduciary fraud principles derived from *Murphy v. Wakelee*, 247 Conn. 396 (1998) and *Spector v. Konover*, 57 Conn. App. 121 (2000). Such completely disproves plaintiff's assertion in his first application that he is hampered

by a lack of access to Connecticut resources.

Moreover, the plaintiff has successfully prosecuted an appeal before the Second Circuit on procedural grounds in regard to his motion for a return of seized property. He has filed two federal civil rights actions, both of which were appealed to that same circuit. These are not the indicia of a plaintiff that cannot represent himself at a simple "swearing contest" trial.

The plaintiff's failure to adequately explain why he cannot represent himself, combined with the objective indicia presented by his record and practice in *pro se* litigation before this district, as well as the central district of California, support the conclusion that his application for representation should be denied.

## SUMMARY AS TO OBJECTION TO MOTION FOR APPOINTMENT OF COUNSEL

The totality of the circumstances in this case greatly weighs against the appointment of counsel for plaintiff. The simplicity of the case, the plaintiff's deep litigation experience, the plaintiff's adequate resources, and the lack of a sound reason why he cannot represent himself all tip the scale against appointment under the *Hodge* criteria. Given the facts of this case in relation to the *Hodge* criteria, it would be an abuse of discretion to appoint counsel for plaintiff.

The plaintiff's case is of dubious merit. He doesn't have standing with regard to the note. His credibility is weak. His claim lacks subject matter jurisdiction for several reasons, including the want of the necessary amount in controversy. There is little likelihood he will prevail. It would be a waste of the precious asset of volunteer lawyer time to appoint counsel on this case, and for this plaintiff.

**RESPONSE AND OBJECTION TO PLAINTIFF'S MOTION**
**FOR WRIT OF HABEAS CORPUS TESTIFICANDUM**

**STANDARDS**

Whether to issue a writ of habeas corpus ad testificandum under 28 U.S.C. § 2241 (c)(5) rests within the sound discretion of the district court. *Latiolais v. Whitley*, 93 F.3d 205, 208 (5th Cir. 1996). A prisoner has no constitutional right to be present, or to testify, at his own civil trial. *Id*.

"In order to determine whether the prisoner should appear at trial, the district court must consider factors such as whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted. Consideration of these factors is meant to ensure that the district court properly weighs the interest of the inmate in presenting his case in person, versus the interest of the [government] in maintaining the inmate's incarceration." Id. (Internal citations and quotation marks omitted).

Courts must examine whether the physical exclusion of a plaintiff from trial would prejudice his substantial rights. *Id*.

**ARGUMENT**

The plaintiff is a serious and violent felon, sentenced to serve 50 years in federal custody for various crimes that include attempts to kill, or to have people killed. He also has a substantial criminal connection to the Connecticut area. The plaintiff is clearly a danger to the community, presents a unique threat to escape, and may have persons in Connecticut willing to lend him significant assistance in attempted flight. Transferring

20

the prisoner for this simple hearing and trial would also present a large cost and undue burden on governmental resources.

The participation by plaintiff through video conference will permit plaintiff to proceed without prejudice to his claim. His credibility can be judged nearly as well as if he were present in person, he will have complete access to, and view of, the proceedings, and none of the potential pitfalls attendant with transporting the plaintiff could become reality. The plaintiff's actual presence would not meaningfully further this case when measured against his participation by video conference with the risks and costs taken into account. Such participation would fully accommodate the plaintiff's rights, while also fully safeguarding the community.

There is no reason why this relatively simple hearing and trial cannot be conducted with the plaintiff exclusively participating via video conference from his confinement. The plaintiff's participation in both prosecuting the claim and in testifying should be done exclusively via video conference.

## CONCLUSION

Wherefore, defendant Vaillancourt prays that this Court would either strike or deny the plaintiff's second application for representation by counsel and deny plaintiff's first motion for writ of habeas corpus ad testificandum.

Respectfully submitted,

Karl Vaillancourt
Defendant Pro Se
29 State Street
North Haven, CT  06473

ORAL HEARING IS NOT REQUESTED

21

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the within motion to strike and response was mailed, certified, return receipt requested and postage prepaid, to plaintiff Aaron Ben Northrop, at Reg. No. 61713-080, Victorville U.S. Penitentiary, P.O. Box 5600, Adelanto, CA  92301, on this ___18th___ day of __August__ , 2005.

Karl Vaillancourt
Defendant Pro Se
29 State Street
North Haven, CT  06473