Original

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

AARON BEN NORTHROP,

       Plaintiff,

         V.

KARL VAILLANCOURT,

       Defendant,

Case No: 3:01CV364(AVC)

October 18, 2005

## PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE ISSUED ON SEPTEMBER 27, 2005

Plaintiff AARON BEN NORTHROP, pro se, respectfully submits this response to the court's order to show cause issued on September 27, 2005. In response to the court's order plaintiff presents the following facts, evidence and proposed evidence to support his claim that there was an agreement between the parties to extend the date of payment on the note.

### FACT NO: 1

On February 8, 1990, the plaintiff loaned the defendant forty thousand dollars. The defendant agreed to pay back the loan by February 8, 1995, a pay interest at the rate of nine percent per annum.

Note: Even though the defendant has testified that he never borrowed money from the plaintiff (See Exhibit A, Defendant's Answers to Plaintiff's First Set of Interrogatories attached), the court has concluded that there is no genuine issue of material fact in dispute in regard to this matter.

1

## FACT NO: 2

Defendant used the money to go into business with the plaintiff and form a corporation called Marble and Granite Network of America ("MAGNA").

Note: This fact will be easy to establish at trial. Defendant admits in his affidavit that he went into business with the plaintiff and formed a corporation called MAGNA (See Exhibit B, Affidavit of Witness Karl Vaillancourt). Attorney Timothy Yolen will cooberate the testimony of Mr. Vaillancourt and will testify that the money loaned was invested into the corporation.

## FACT NO: 3

At the time that the defendant borrowed the money from the plaintiff, the defendant had no savings, no credit, little income, and no assets. He was completely depending on the projected profits of the corporation to pay back the loan.

Note: Plaintiff will establish this fact at trial by eliciting testimony from the defendant or from friends of the defendant who knew him, such as Mark Cartier. The defendant has refused to participate in pre trial discovery. He will not answer the plaintiff's request for admissions and he refuses to provide any information relating to his financial history (See Defendant's Answers to Plaintiff's First Set of Interrogatories). Plaintiff has filed motions to compel which have been granted but the defendant avoids most questions, will not answer questions truthfully or directly and has made plaintiff's ability to obtain pre trial discovery virtually impossible.

## FACT NO: 4

In February of 1992, the corporation lost all of its capital, could not pay its debts, and was forced to go out of business.

Note: Plaintiff will establish this fact at trial by eliciting testimony from the defendant, Mark Cartier and Timothy Yolen. The defendant admits that the corporation went out of business and that he personally loaded all of the assets of the company into a storage trailer located in Branfrod, Connecticut (See Exhibit B, Affidavit of Karl Vaillancourt). Timothy Yolen will testify that when the corporation closed its doors it failed to pay an outstanding debt of approximately $1,500 which it owed to his firm.

FACT NO: 5

During the time the corporation was in business,
the defendant did not earn enough income to make
any payments on the loan.

Note: See Exhibit C, Affidavit of Karl Vaillancourt, where he
admits that he does "not recollect ever having made a payment
on the note."

FACT NO: 6

Immediately after the corporation went out of business,
the defendant was unemployed, had no other source of
income, and had no ability to pay back the loan by
February of 1995.

Note: Plaintiff will establish this fact at trial by eliciting
testimony from the defendant and Mark Cartier. The defendant
admits that he did not make any payments on the note prior to
February of 1995 (See Exhibit C, Affidavit of Karl Vaillancourt).

FACT NO: 7

Because of the defendant's financial situation,
the defendant was predisposed to request an extension
of time to pay back the loan.

Note: Plaintiff will establish this fact by eliciting testimony
from the defendant at trial.

FACT NO: 8

The plaintiff had knowledge of the defendant's
financial situation and was predisposed to grant the
defendant an extension of time in order to protect
his investment.

Plaintiff will establish this fact by his own testimony and the
testimony of the defendant and Mark Cartier.

FACT NO: 9

Plaintiff had a reputation of doing business orally
and with a handshake rather than in writing.

3

Note: Plaintiff will call two witnesses at trial to establish this fact. John Leary and Rod Codwell. Both witnesses will testify that they have known the plaintiff for over 20 years and had numerous business dealing with the plaintiff involving credit and loan transactions. They will testify that the plaintiff preferred to do business orally and with a handshake rather than in writing.

### FACT NO: 10

At the time that the defendant borrowed the money, the defendant knew the plaintiff for over 15 years, grew up in the same neighborhood as the plaintiff, and led the plaintiff to believe that defendant was a friend that the plaintiff could trust.

Note: This fact will be established by the testimony of the defendant, plaintiff and Mark Cartier at trial.

### FACT NO: 11

The plaintiff and the defendant were both members of a private neighborhood club called "Minor Park," and the plaintiff and defendant would occassionally meet there to discuss business.

Note: This fact will be established by the testimony of the defendant and Mark Cartier at trial.

### FACT NO: 12

In March of 1992, the defendant called the plaintiff on the telephone and asked the plaintiff to meet him at the Minor Park Club. Plaintiff met with the defendant later that night. At the meeting the defendant explained his financial situation and requested an additional five year extension of time to pay back the loan. He promised to continue to pay interest at the rate of nine percent per year. Plaintiff agreed to grant the extension and promised the defendant that he would not bring any action to enforce the note until after February 8, 2000.

Note: Plaintiff will establish this fact with his own testimony.

4

FACT NO. 13

The defendant failed to pay back the loan by February 8, 1995, and the plaintiff made no attempt to enforce payment on the note until March of 2001.

Note: See Exhibit B, Affidavit of Karl Vaillancourt, where he admits that "I do not recollect ever having made a payment on the note, but I am positive that I have not made any payment on the note after December 31, 1991," and "prior to filing this lawsuit, Northrop has never approached me to make any demand on any loan." See also, 17A American Jurisprudence 2d, Contracts, § 147 Promise to Extend time or to forbear - "A promise to forbear may be implied from the conduct of the parties and the nature of the transaction, especially if actual forbearance follows the promise." Footnotes 5 and 6 citing cases.


I.  THE COURT WRONGFULLY CONCLUDED THAT THE PROMISSORY NOTE AND THE PLEDGE AGREEMENT ARE ONE IN THE SAME.

Plaintiff states that the promissory note and the pledge agreement that the plaintiff submitted into evidence are two separate and distinct contracts involving different parties and different subject matter. The reason that the plaintiff submitted both contracts into evidence was to show that there were other witnesses to the transaction involving the loan. Although the note is mentioned in the pledge agreement, it is always referred to as "the Note," whereas the pledge agreement is always referred to as "this Agreement." The no-oral-modification clause contained in the pledge agreement only refers to "this Agreement" and makes no mention of "the Note." Therefore, the no-oral-modification clause contained in the pledge agreement does not extend to the note and any oral agreement to extend the date of payment on the note would be legally binding on the defendant. Moreover, the defendant has never even argued that the no-oral-modification clause contained in the pledge agreement prohibited the parties

5

from entering into an agreement to extend the date of payment on the note. This argument has been advanced for the first time by the court. Plaintiff believes that it is improper and unfair for the court to take sides and introduce new arguments on behalf of one of the parties. The parties should be required to argue their own cases.

II.    GRANTING DEFENDANT SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS WOULD PREJUDICE THE PLAINTIFF AND DEPRIVE THE PLAINTIFF OF HIS RIGHT TO A TRIAL BY THE JURY.

On October 4, 2002, this court struck the defendant's first answer from the record because the defendant failed to include his address and telephone number in the answer, and because the defendant refused to amend the answer to correct the deficiency after being directed to do so by the court. Eight months later, after the plaintiff filed a motion for default judgment, the defendant filed a late answer which included seven affirmative defenses: 1) "lack of standing," 2) "statute of limitations," 3) "breach of contract," 4) "[b]reach of implied covenant of good faith and fair dealing," 5) "satisfaction," 6) "unjust enrichment," and 7) "[i]n pari delicto."

On August 22, 2003, this court granted the defendant's motion to file a late answer (document no. 51). However, the court struck all of the defendant's affirmative defenses from the answer, and ordered a jury trial on the jurisdictional issue as to whether or not the amount in controversy exceeded seventy five thousand dollars. The court concluded that the defendant's "delay in filing his answer was willful and that permitting him to assert special defenses at

6

this stage of the proceedings would unfairly prejudice the plaintiff."

A defense based on the statute of limitations is an affirmative defense that must be asserted at the earliest possible stage of the proceedings. Throughout these entire proceedings the plaintiff was made to understand that a defense based on the statute of limitations was waived and was not going to be made availlable to the defendant. In addition, the court made a finding that the plaintiff would be "unfairly prejudice[d]" if the defendant were allowed to raise such a defense. Now, two years later, the court wants to sua sponte reconsider its order. What has changed between now and then? Recently, the defendant has directed attacks on the plaintiff's credibility to the court, and the court, without affording the plaintiff an opportunity to respond, has weighed the plaintiff's testimony and determined that the plaintiff does not make for a credible witness. Plaintiff states that weighing the credibility of a witnesses testimony is a jury function. Plaintiff has demanded a jury trial on the issue of whether or not there was an agreement between the parties to extend the date of payment on the note. Moreover, this issue has nothing to do with a defense based on the statute of limitations, but rather is relevant only in determining whether or not the amount in controversy exceeds seventy five thousand dollars. Plaintiff's right to a jury trial is guaranteed under the Seventh Amendment of the United States Constitution and Rule 38(a) of the Federal Rules of Civil Procedure. Plaintiff would appriciate the opportunity not only to defend himself against attacks made on his credibility, but also attack the credibility of the defendant. However, all attacks on the credibility of witnesses should be directed to the jury and not the court.

7

III.  GRANTING DEFENDANT SUMMARY JUDGMENT BASED ON THE
      STATUTE OF LIMITATIONS WOULD UNJUSTLY SANCTION THE
      PLAINTIFF AND REWARD THE DEFENDANT FOR HIS MISCONDUCT
      IN FAILING TO COMPLY WITH THE PLAINTIFF'S DISCOVERY
      REQUESTS.

The court has placed an additional burden on the plaintiff
by requiring the plaintiff to produce corroberating evidence to
support his sworn testimony. Plaintiff has attempted to gather
evidence by serving the defendant with admissions and interrogatories,
but the defendant refuses to cooperate. Plaintiff has even filed
motions to compel which have been granted, but the defendant
continues to evade answering any question truthfully or directly,
and to date has failed to answer the plaintiff's request for
admissions. A review of the defendant's answers to plaintiff's
requests for interrogatories clearly demonstrates the point.
(See Exhibit A). The defendant has refused to disclose any
information relating to his financial history, and the defendant
will not even admit that the plaintiff loaned him money, a fact
that can easily be established by other witnesses, such as attorney
Timothy Yolen. By granting the defendant summary judgment based
on the statute of limitations, the court would be rewarding the
defendant for his misconduct and willful concealment of evidence.
In addition, the plaintiff has done nothing to deserve such a
sanction.

IV.  GRANTING THE DEFENDANT SUMMARY JUDGMENT BASED ON THE
     STATUTE OF LIMITATIONS WHERE THERE WAS AN AGREEMENT
     BETWEEN THE PARTIES TO EXTEND THE DATE OF PAYMENT
     ON THE NOTE, WOULD OPERATE AS A FRAUD ON THE PLAINTIFF.

Plaintiff states that there is a genuine issue of material
fact in dispute on the issue of whether or not there was an

agreement between the parties to extend the date of payment on the note. Plaintiff now believes that the intent of the defendant in requesting the extension of time was to cause a delay on the plaintiff's part in the filing of the suit so as to avoid paying the debt altogether. If the defendant is allowed to prevail on his statute of limitations defense without a jury considering whether or not an agreement to extend the date of payment on note existed, then the judgment would operate as a fraud on the plaintiff. The defendant should not be permitted to benefit from his fraudulent misconduct.

## RELIEF

Wherefore plaintiff requests that the court deny the defendant a defense based on the statute of limitations and provide the plaintiff with a jury trial on the issue as to whether or not the amount in controversy exceeds seventy five thousand dollars.

Respectfully submitted,

*AARON BEN NORTHROP*
AARON BEN NORTHROP
Reg. No: 61713-080
Victorville U.S. Penitentiary
P.O. Box 5500
Adelanto, CA 92301

9

## CERTIFICATE OF SERVICE

   This is to certify that a true and correct copy of this
response to the court's order to show cause was mailed, postage
prepaid, to the defendant Karl Vaillancourt, at 29 State Street,
North Haven, Connecticut, on this 18th day of October, 2005.


                              AARON BEN NORTHROP
                              AARON BEN NORTHROP
                              Reg. No: 61713-080
                              Victorville U.S. Penitentiary
                              P.O. Box 5500
                              Adelanto, CA 92301

Karl Vaillancourt
Defendant, Pro Se
29 State Street
North Haven, CT  06473

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Aaron Ben Northrop, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:01-CV-364 (AVC) |
| | ) | |
| | ) | |
| Karl Vaillancourt, | ) | September 18, 2003 |
| Defendant. | ) | |

### DEFENDANT'S ANSWERS TO PLAINTIFF'S
### FIRST SET OF INTERROGATORIES

Now comes Karl Vaillancourt, the defendant in the instant action and, pursuant to Fed. R.

Civ. P. 33, answers under oath the first set of interrogatories propounded by plaintiff.

### INTERROGATORY NO. 1:

State for yourself and your spouse, your current and all prior names, including aliases,

social security number, current address, and all other addresses for the last ten years.  For each

address, please list the inclusive months and years you and/or your spouse lived at each address.

### ANSWER:

The defendant's name is Karl W. Vaillancourt and his present address is 29 State Street,

North Haven, Connecticut  06473.  The remainder of this interrogatory is objected to on privacy

and relevancy grounds set forth in the defendant's motion to quash interrogatories or for protective

order, a copy of which is supplied herewith and incorporated herein by reference as if copied now

verbatim.

1

Exhibit A

**INTERROGATORY NO. 2:**

List by name, address, current or last known telephone number each and every employer for whom you have worked and for whom your spouse has worked during the past ten years, specifying for each the following: inclusive dates of employment; the duties of employment; the amount of gross and net monthly salary; the reason for leaving employment.

**ANSWER:**

The entirety of this interrogatory is objected to on privacy and relevancy grounds set forth in the defendant's motion to quash interrogatories or for protective order, a copy of which is supplied herewith and incorporated herein by reference as if copied now verbatim.

**INTERROGATORY NO. 3:**

In addition to the income listed by you in answer to Interrogatory No. 2, list the sources of all other income received by you or your spouse from any source(s) for the last ten years, specifying the following for each source: the names and address of the person or organization from which the income was received, the date(s) and amount(s) of income received, the reason such income was paid to you.

**ANSWER:**

The entirety of this interrogatory is objected to on privacy and relevancy grounds set forth in the defendant's motion to quash interrogatories or for protective order, a copy of which is supplied herewith and incorporated herein by reference as if copied now verbatim.

**INTERROGATORY NO. 4:**

List all automobiles, boats and aircraft owned by you or your spouse during the past ten years by year, make and model, and for each conveyance state the following: the inclusive dates during which the conveyance was owned; the name of the registered and legal owner of the conveyance as registered with the Department of Motor Vehicles, or other agency, during the time the conveyance was owned; if the conveyance was paid for in cash, the amount of the payment for

each conveyance; if purchased with a loan, the amount of the monthly payments, the name and address of the person or organization by and to whom such payments were made.

**ANSWER:**

The entirety of this interrogatory is objected to on privacy and relevancy grounds set forth in the defendant's motion to quash interrogatories or for protective order, a copy of which is supplied herewith and incorporated herein by reference as if copied now verbatim.

**INTERROGATORY NO. 5:**

Identify all credit cards you or your spouse have had during the past ten years, and state for each credit card the name and address of the bank, store or other institution which issued the card to you, the account number and expiration date of the credit card(s), the dates you had the credit card(s) with the institution(s) and all past and current credit limit(s) for each credit card account.

**ANSWER:**

The entirety of this interrogatory is objected to on privacy and relevancy grounds set forth in the defendant's motion to quash interrogatories or for protective order, a copy of which is supplied herewith and incorporated herein by reference as if copied now verbatim.

**INTERROGATORY NO. 6:**

State the name and address of the financial institution, the account number and the identity of the account holder for all financial accounts held by yourself or your spouse for the last five years. Financial accounts include, but is not limited to, savings accounts, checking accounts, NOW accounts, money market funds, IRA's, municipal bonds, treasury bills, loans, mortgages, stocks, bonds, commodities, stock options, or any other financial investments, indebtedness, assets or liabilities of any type.

**ANSWER:**

The entirety of this interrogatory is objected to on privacy and relevancy grounds set forth

in the defendant's motion to quash interrogatories or for protective order, a copy of which is supplied herewith and incorporated herein by reference as if copied now verbatim.

## INTERROGATORY NO. 7:

List, by type of property, address, date of sale or acquisition, the amount paid to or by you or your spouse, the identity of the purchaser or seller, the date sold or purchased, (if any) and the amount realized or paid by you or your spouse from the sale or purchase, of all real and personal property acquired or sold by you or your spouse, or on behalf of you or your spouse, at any time during the last five years.  Property refers to items which have a fair market value of greater than $500.00.

## ANSWER:

The entirety of this interrogatory is objected to on privacy and relevancy grounds set forth in the defendant's motion to quash interrogatories or for protective order, a copy of which is supplied herewith and incorporated herein by reference as if copied now verbatim.

## INTERROGATORY NO. 8:

Itemize the amounts spent by yourself, your spouse and all dependents, on a monthly basis, during each of the past two years, for the following:  food, clothing, shelter, entertainment, insurance, medical services, and all other expenses.  For each dependent please list the names, dates of birth, and current business and residence addresses and telephone numbers.

## ANSWER:

The entirety of this interrogatory is objected to on privacy and relevancy grounds set forth in the defendant's motion to quash interrogatories or for protective order, a copy of which is supplied herewith and incorporated herein by reference as if copied now verbatim.

## INTERROGATORY NO. 9:

Did the plaintiff ever loan you forty thousand dollars at a rate of nine percent interest per year?

**ANSWER:**

The defendant technically answers no, because he was never loaned any "money," and the framing of the question implies such. The supposed loan related only to a portion of the capital stock in MAGNA. The defendant expressly denies that he owes plaintiff any monies or that any loan agreement between the parties was ever enforceable against defendant.

**INTERROGATORY NO. 10:**

If your answer to Interrogatory No. 9 is yes, please list the date you borrowed the money, the terms and conditions of the loan, and the amount you paid back, if any, on that loan.

**ANSWER:**

The defendant's answers that he never borrowed any "money." As to the date, terms and conditions requested the defendant's answer is derived from a copy of the promissory note, and such speaks for itself. The defendant has no independent recollection with regard to the details of the note. A copy of the note is in the plaintiff's possession. To the extent that a loan ever existed, which defendant denies, the defendant paid the loan back in full on February 13, 1990 by way of the plaintiff's repossession of the MAGNA enterprise five days after the formation of the corporation.

**INTERROGATORY NO. 11:**

If your answer to Interrogatory No. 9 is yes, was the money loaned to you pursuant to a written contract that you signed in the presence of Eduardo[1] Silva, Attorney Tim Yolen, and Attorney John Walkley?

**ANSWER:**

The defendant has no independent recollection of the presence of Tim Yolen or John Walkley. The defendant has an independent recollection of signing a series of corporate documents

---

[1] Spelling is corrected from the original to match the first name used by Mr. Silva in execution of the Pledge Agreement at page 6.

at the plaintiff's attorney's office in the presence of Eduardo Silva, the plaintiff and a female attorney from the Yolen law office by the name of Cecelia Danahar. The defendant reasserts that regardless of the contract, such is unenforceable against him.

**INTERROGATORY NO. 12:**

Did you ever invest forty thousand dollars into a corporation named "Marble and Granite Network of America" ("MAGNA")?

**ANSWER:**

The defendant answers that from a technical standpoint the response to this question is no. The defendant would offer that he never received any monies with regard to the corporate formation, and therefore, never invested anything. He was given shares of stock in the corporation on February 8, 1990 and the plaintiff repossessed the shares representing defendant's interest in MAGNA on February 13, 1990. This is so because he was setting up a fraud to hide drug sale proceeds, and all he wanted was defendant's name on the enterprise. Five days into corporate operations, plaintiff took the stock in the corporation back. The loan and the corporation were mere shams designed by plaintiff to launder the plaintiff's drug money.

**INTERROGATORY NO. 13:**

If your answer to Interrogatory No. 12 is yes, please explain where you obtained the money to invest into the corporation.

**ANSWER:**

Although defendant answered the previous question in the negative, defendant answers this question.

The defendant discovered that the monies provided by plaintiff to capitalize the business were from drug sale proceeds of the plaintiff's narcotics trafficking, for which, among other crimes, the plaintiff is serving a 50 year prison sentence without possibility of parole. The defendant never took nor did defendant receive any monies from plaintiff.

6

Respectfully submitted,

Karl Vaillancourt
Defendant Pro Se
29 State Street
North Haven, CT  06473

## Acknowledgment

County of New Haven    )
                       )
State of Connecticut   )

Before me personally appeared Karl W. Vaillancourt, who is personally known to me, or has presented sufficient identification, and after being duly sworn, did execute and subscribe to the foregoing Interrogatories in my presence this 18 th day of September, 2003.

NOTARY PUBLIC

My commission expires on _____

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the within Interrogatories was mailed, certified, return receipt requested and postage prepaid, to plaintiff Aaron Ben Northrop, at Reg. No. 61713-080, Lompoc U.S. Penitentiary, 3901 Klein Blvd., Lompoc, CA 93436, on this 18 th day of September, 2003.

Karl Vaillancourt
Defendant Pro Se
29 State Street
North Haven, CT  06473

7

EXHIBIT "A"

Karl Vaillancourt
Defendant, Pro Se
29 State Street
North Haven, CT 06473

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Aaron Ben Northrop, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:01-CV-364 (AVC) |
| | ) | |
| | ) | |
| Karl Vaillancourt, | ) | December 21, 2004 |
| Defendant. | ) | |

### AFFIDAVIT OF WITNESS KARL VAILLANCOURT

Now comes Karl Vaillancourt, and after being duly sworn, does depose and say:

1.    I have been a professional stone mason and tile setter for more than 20 years.

2.    I am uniquely aware of the values of the equipment and supplies utilized in my industry, both new and used, as I purchase, use and sell such on an ongoing basis.

3.    I personally participated in loading all of the assets and papers of MAGNA into a certain storage trailer, which was subsequently transported to Branford, Connecticut for safe-keeping, under the possession and control of Anthony Amendola.

4.    At the time MAGNA wound up its affairs, it possessed used equipment, supplies and inventory with a trade resale value of approximately $80,000.

5.    I personally saw Aaron Northrop at the 100 Airport Road location of

Exhibit B

MAGNA on numerous occasions, including during June, July and August of 1990.

6.     I personally witnessed Aaron Northrop receiving and reading mail addressed to himself and to MAGNA at the Airport Road location of MAGNA, including during June, July and August of 1990.

7.     I have not seen the original promissory note between Aaron Northrop and myself since February of 1990.

8.     At no time have I ever come into possession by any means of the original promissory note between Aaron Northrop and myself.

9.     I have personal and first-hand knowledge of the foregoing stated facts.

Affiant affirms under the penalty of perjury and the laws of the United States that the statements made herein are true and correct to the best of affiant's knowledge and belief.

Karl Vaillancourt
29 State Street
North Haven, CT  06473

## ACKNOWLEDGMENT

State of Nevada     )
                    )
County of Clark     )

Before me personally appeared Karl Vaillancourt, who is personally known to me, or has presented identification to establish his identity to my satisfaction, and after being duly sworn, did execute and subscribe to the foregoing Affidavit of Witness in my presence this 24 th day of December, 2004.



CHRISTIAN SALAZAR
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 99-54982-1
MY APPT. EXPIRES MAR. 11, 2007

NOTARY PUBLIC

My commission expires on 3 · 11 · 7 .

Karl Vaillancourt
Defendant, Pro Se
29 State Street
North Haven, CT  06473

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

Aaron Ben Northrop,    )
       Plaintiff,    )
              )
              )
v.              )        Case No. 3:01-CV-364 (AVC)
              )
              )
Karl Vaillancourt,    )
       Defendant.    )

## AFFIDAVIT OF WITNESS KARL VAILLANCOURT

Now comes Karl Vaillancourt, the defendant in the instant action and, after being duly sworn, does depose and say:

1.    In November of 1989, Aaron Ben Northrop, Eduardo Silva and myself formed a company called Marble and Granite Network of America ("MAGNA").  The purpose of MAGNA was to pursue home improvement contracts and other opportunities related to Silva's and my skills in stone and tile.  In essence, Northrop was to finance and profit from the operation and stay behind the scene, while Silva and I drew a salary from the company for our services in running the operation.

2.    Subsequent to the formation of MAGNA, Northrop's attorneys drafted documents that were supposedly shareholders agreements, which I signed on that basis.

3.    Within two months of the start of operations, and just days after we signed the shareholders agreements, Northrop decided on February 13, 1990 that he could run the operation better than we could.  He in essence repossessed MAGNA, its capital stock, its operations, its contracts and its assets.  I was stripped of my ownership and position in MAGNA.

4.    I had not had any contact or conversations with Northrop, nor any representative

Exhibit C

of his, since 1991 until the service of a summons I received on this lawsuit on February 5, 2002.

5.    At no time did I ever agree to or sign an extension of any loan agreement with Northrop.

6.    Prior to his filing of this lawsuit, Northrop has never approached me to make demand on any loan or to seek the execution of any extension agreement, nor has any representative of Northrop done so.

7.    I do not recollect ever having made a payment on the note, but I am positive that I have not made any payment on the note after December 31, 1991.

8.    I have personal and first-hand knowledge of the foregoing stated facts.

Further, Affiant saith not.

Affiant affirms under the penalty of perjury and the laws of the United States that the statements made herein are true and correct to the best of affiant's knowledge and belief.

X _Karl Vaillancourt (signature)_

Karl Vaillancourt
Defendant Pro Se
29 State Street
North Haven, CT  06473

## Acknowledgment

County of New Haven    )
                       )
State of Connecticut   )                                 June 24, 2003

Before me personally appeared Karl Vaillancourt, who is personally known to me, or has presented identification to establish his identity to my satisfaction, and after being duly sworn, did execute and subscribe to the foregoing Affidavit of Witness in my presence this 24 th day of June, 2003.

X _Don Bello (signature)_

NOTARY PUBLIC

My commission expires on  8·31·05