Karl Vaillancourt  
Defendant, Pro Se  
29 State Street  
North Haven, CT  06473

FILED

2005 OCT 31  P 3: 17

U.S. DISTRICT COURT
HARTFORD, CT.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Aaron Ben Northrop, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:01-CV-364 (AVC) |
| ) | |
| Karl Vaillancourt, ) | October  31 , 2005 |
|     Defendant. ) | |

### DEFENDANT'S REPLY TO RESPONSE TO ORDER, MOTION IN LIMINE AND MOTION TO DISMISS

Now comes Karl Vaillancourt, the defendant in the instant action and, pursuant to Local Rule 7, replies to plaintiff's *Response to Order to Show Cause* (Docket Entry No. 125), moves *in limine* upon plaintiff's suggested introduction of irrelevant and previously undeclared testimony and, pursuant to Fed. R. Civ. P. §§12(b)(1) and 12(h)(3), moves this Court to dismiss this action with prejudice for lack of subject-matter jurisdiction.

### BACKGROUND

On September 27, 2005, this Court entered an *Order to Show Cause* directed to plaintiff wherein the Court noted that plaintiff has inconsistently claimed an oral modification of the note as occurring in both 1992 and 1995, and noted that the plaintiff has presented no evidence of the alleged oral modification other than his own claim. The Court went on to rule that plaintiff's allegation of an oral modification of the terms of the note is legally untenable under the contract, and that unless plaintiff could show some other reason why his case should not be dismissed, the Court would dismiss the action as

barred by the applicable statute of limitations. The Court warned the plaintiff that simply repeating his own personal claims would be insufficient to prevent judgment from entering in favor of defendant. See Docket Entry No. 120.

On October 25, 2005 the plaintiff filed his *Response to the Court's Order to Show Cause* (Docket Entry No. 125) ("*Response*"), arguing that the Court cannot restore defendant's statute of limitations defense after it had previously declared such as waived, and that the "no-oral-modification" clause found in the pledge agreement is not applicable to the promissory note. The plaintiff also ran through a litany of further personal claims about the evidence he would produce through defendant's witnesses if he received a trial, but appended no new documentary or testimonial evidence to the *Response* to support any of his claims. The fact to be taken from this absence is that no objective evidence is forthcoming, for now was unmistakably the time that the Court was requesting he show it.

The defendant now replies to plaintiff's *Response*, moves *in limine* against plaintiff's suggested irrelevant testimony and previously undeclared witnesses, and further, moves for dismissal for lack of subject matter jurisdiction, because the plaintiff's inability to prove a valid and binding extension of the note causes plaintiff's claim to lack diversity, depriving this Court of all authority to entertain the plaintiff's action.

## DEFENDANT'S REPLY

The defendant replies that plaintiff's allegations in his *Response* denominated as Facts 1 through 13 are simply irrelevant to the issue of whether an extension agreement existed. Nothing in defendant's affidavits, answers or admissions supports the existence of a valid extension agreement. Nothing in the portended testimony plaintiff suggests

may be adduced from defendant's witnesses supports his claim either. If anything, defendant's denials as to making payments completely supports defendant's consistent position; in defendant's mind there was no remaining obligation to be paid and no existing agreement to extend.

Where there is an unambiguous written contract, the language used is the intent of the parties, and such can not be contradicted without solid objective and unequivocal evidence to the contrary. The contract clearly demonstrates that the intent of the parties was to prohibit future oral modifications. The plaintiff's "say-so," standing alone and without support by unequivocal objective evidence, is insufficient to create a genuine issue of material fact for trial, as a matter of law.

As for Fact 13, what the plaintiff claims as being forbearance in accordance with the claimed modification is explainable without pointing to a valid modification agreement. It therefore does not demonstrate reliance on a clear and definite promise, and cannot imply the validity of the claimed modification. Implication by promissory estoppel requires plaintiff to prove a meeting of the minds (mutual assent). He has not done so. Implication by promissory estoppel requires plaintiff to prove the existence of a clear and definite promise which led to his detrimental reliance. He has not done so. Implication by promissory estoppel requires a showing of diligence and good faith by plaintiff. He has not done so. Further, implied modification by promissory estoppel can only be done to remedy a demonstrated injustice. There has been no proof of any ill motive, deceit or injustice committed by defendant; just continued unsupported allegations. In fact, the only objective direct evidence placed before the Court on the subject (plaintiff's letter to Yolen) shows by a large preponderance that plaintiff's claims

of an oral extension agreement are false. The law requires more than unverified personal allegations; it demands evidence.

The *Response* is without any relevance because Fact 12 is the only relevant allegation, and it consists of nothing more than a continuation of plaintiff's own unsubstantiated claim of a verbal modification. All that has been added by plaintiff in his *Response* is the claimed location of the claimed conversation. The note to Fact 12 shows that plaintiff would engage in a mere swearing contest at trial on this issue, and no proof beyond his own words is forthcoming. The Court stated in its *Order to Show Cause* that mere repetition of plaintiff's own claims would be insufficient to prevent judgment from entering against him. Further, defendant would remind the Court that documentary evidence exists that plaintiff was either in jail in New Haven (March 2 through late March), or in Las Vegas, Nevada (March 26 through April 4) for nearly all of March of 1992. He definitely did not meet defendant at the Minor Park Club in March of 1992.

Given the intent of the parties embodied in the written contract, the plaintiff's proven whereabouts in March of 1992, the factual inconsistencies on the subject contained in his pleadings and his evidential admission in his December 11, 2002 letter to Timothy Yolen, without some objective unequivocal evidence to support his own claim the plaintiff cannot possibly meet the burden of the preponderance of the evidence. He has not shown a material disputed issue because all of the objective unequivocal evidence strongly militates against his case, and his claim therefore does not warrant a trial.

The defendant replies that it is proper for the Court to reinstate the defense of the statute of limitations. Defendant raised the defense in his original *Answer* twenty days after service of the summons. The plaintiff was put on notice of the defense at the

earliest possible stage of the proceedings (in defendant's first responsive pleading) and that is all that is required to assert the defense under the Federal Rules of Civil Procedure.

The defendant further replies by stating that Connecticut law is long-standing and crystal clear on the interpretation of interdependent and/or incorporated multiple contracts concerning a single transaction (subject matter) between the same parties. The plaintiff's claims that the pledge agreement and note involve different transactions/subject matter and different parties are wholly disproved by the contents of the pledge agreement (referencing a promissory note of $40,000; securing it with capital stock; the identities of Pledgor and Pledgee; making the note "a part hereof;" making the note Exhibit A thereto; the date of the acknowledgement by Cecelia U. Danaher – February 8, 1990 – suspiciously identical to the date of execution of the promissory note). The promissory note itself further belies plaintiff's claims (secured by a pledge of stock; also dated February 8, 1990; for $40,000; the identities of the holder and maker).

The defendant replies that he made the argument that the no-oral-modification clause in the pledge agreement bars the claimed oral extension agreement on July 15, 2003. See defendant's *Reply to Plaintiff's Objections and Motions*, Docket Entry No. 50, at page 7 (paragraph immediately above "Statute of Frauds" defense). The Court did not interject its own legal argument in this regard.

Defendant replies that he did not impugn plaintiff's credibility. The plaintiff did a fine job of that all by himself. Defendant simply pointed out all of the relevant facts in the public record, and all of the admissions that plaintiff has made, that show plaintiff's claim is not viable. Plaintiff can respond all he wishes, but the public record and his court filings are irrefutable. The Court has not judged plaintiff's credibility. The Court

5

has only taken notice of the objective facts. The Court is not requiring the corroborating proof – the law requires such proof.

Plaintiff mischaracterizes defendant's financial position in 1992 and 1995 because plaintiff couldn't possibly know what such was. Plaintiff was either in jail, federal prison or on the lam from March 2, 1992 onward. Defendant is a skilled tradesman, and was a working member of the Bricklayers and Artisans Union, Local No. 1, in New Haven, making $22 per hour. Defendant never paid because there was no obligation to pay – it had been paid with the surrender of stock. If the plaintiff had made a diligent investigation at the time of the claimed extension agreement, such would have reflected that defendant was not in financial hardship in 1992 or 1995, and was simply not paying him anything because defendant knew the contract was already fully satisfied.

Finally, defendant replies that he has answered the only set of interrogatories and admissions he has received, said answers being dated September 18, 2003, that defendant's answers were made truthfully and completely, and such were each answered or objected to in accordance with applicable law. This Court sustained defendant's objections to plaintiff's interrogatories and granted defendant's motion for a protective order.

## DEFENDANT'S MOTION IN LIMINE

Plaintiff asserts in his *Response* at Fact 9 and in the associated note (pages 3-4) that he intends to offer evidence at trial that he had a practice of doing business orally, and suggests the introduction of testimony from two previously undisclosed witnesses. The defendant suggests that plaintiff's unilateral practice is irrelevant, given the course of dealings between the parties to have written contracts. Further, defendant suggests that

the witnesses offered by plaintiff are not declared within his Trial Memorandum. For these reasons, defendant moves *in limine* to bar plaintiff's suggested testimony on his unilateral practice of doing business. Defendant would add that few narcotics traffickers have a practice of issuing written bills of sale or cash receipts for their everyday business transactions, and such was plaintiff's trade or business.

## DEFENDANT'S MOTION TO DISMISS

### FACTS

The plaintiff's complaint does not allege an extension. The complaint alleges diversity jurisdiction and an amount in controversy in excess of the statutory minimum. This is the sole basis alleged for the Court's jurisdiction over plaintiff's claim, which is otherwise a state-law contract claim. See *Complaint*, Docket Entry No. 2, March 7, 2001.

The copy of the promissory note submitted by plaintiff contains a stated maturity date of February 8, 1995 and specifically references the pledge of stock as security. The pledge agreement associated with the note contains a "no-oral-modification" clause. Said note is fully incorporated into said pledge agreement by reference ("made a part hereof"), and is made Exhibit A thereto. See *Promissory Note*, last paragraph of page 1, and *Pledge Agreement*, at page 1, first paragraph after "Witnesseth," and at page 5, Clause 7, both appended as exhibits to plaintiff's second *Motion for Default Judgment*, Docket Entry No. 23, June 17, 2003.

The balance due on the note, including contractual interest, through the stated maturity date is $61,544.95 ($40,000, plus 9% interest accruing for five years). See plaintiff's *Estimate of Damages* (as of February 8, 1995), Exhibit E appended to his second *Motion for Default Judgment*, Docket Entry No. 23, filed June 17, 2003.

Plaintiff has admitted his purported claim to an extension agreement between the parties was verbal in nature, to wit: "[I]n or about March of 1992, the affiant and Karl Vaillancourt **entered into a verbal agreement** in which the affiant and Karl Vaillancourt both agreed that the date of payment on the loan would be extended an additional five years." *Affidavit of Aaron Ben Northrop*, dated June 30, 2003, filed on July 7, 2003, appended to *Plaintiff's Objections to Defendant's Motions to Dismiss*, Docket Entry No. 45 (emphasis added).

Defendant denies ever having spoken with plaintiff about, or having agreed with plaintiff upon, any modification of the promissory note.

Plaintiff has not shown any objective evidence of mutual assent to such an oral modification. His *Response* (Docket Entry No. 125) contains no relevant evidence whatsoever (outside of the repetition of his own unverified claims), much less evidence that demonstrates a valid and binding oral modification extending the maturity date of the promissory note.

## LAW

### I. Diversity Jurisdiction

Subject matter jurisdiction is a question of law. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citation omitted).

The district court may resolve disputed issues of fact in order to determine its own subject matter jurisdiction. *Thompson v. County of Franklin*, 15 F.3d 245, 248-49 (2d Cir. 1994).

When jurisdictional facts are challenged, "the party asserting jurisdiction must support those facts with **'competent proof'** and justify [its] allegations by a

preponderance of the evidence." _United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc._, 30 F.3d 298, 305 (2d Cir. 1994) (emphasis supplied).

Where the availability of interest as damages is the basis of federal jurisdiction, **special scrutiny is triggered**, and courts should then scrutinize the claim to ensure that it has a basis in law and fact. _Zahn v. International Paper Company_, 469 F.2d 1033, 1033 n. 1 (2d Cir. 1972), aff'd on other grounds, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (emphasis added).

Interest that is excluded for jurisdictional purposes is interest arising solely by virtue of a delay in payment. _Regan v. Marshall_, 309 F.2d 677, 678 (1st Cir. 1962) (distinguishing "between interest imposed as a penalty for delay in payment, and interest exacted as the agreed upon price for the hire of money").

The Second Circuit has concluded that only interest that is part of the contract between the parties is includible in the calculation of the amount in controversy for jurisdictional purposes. _Transaero, Inc. v. La Fuerza Area Boliviana_, 24 F.3d 457, 461 (2nd Cir. 1994).

The Second Circuit has held that a subsequent discovery of the true amount in controversy, below the minimum statutory jurisdictional amount, required dismissal for lack of subject-matter jurisdiction:

> "[I]f, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."

_Tongkook America, Inc. v. Shipton Sportswear Co._, 14 F.3d 781, 784 (2d. Cir. 1994) (quoting _St. Paul Mercury_, 303 U.S. at 290, 58 S.Ct. at 591.)

## II. Contracts and Modification

The interpretation and construction of what the parties intended in a written contract, if unambiguous, presents only questions of law, which are solely within the province of the court. *Pesino v. Atlantic Bank of New York*, 244 Conn. 85, 92 (1998); *Webster Trust v. Roly*, 64 Conn. App. 233, 239-40, 780 A.2d 142 (2001).

> "The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used."

*Barnard v. Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990) (internal citations and quotation marks omitted) (Covello, J concurred therein).

Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. *Id*.

"In construing a contract, the controlling factor is normally the intent expressed in the contract. . . ." *Alco Standard Corp. v. Charnas*, 56 Conn. App. 568, 571, 744 A.2d 924 (2000).

Where the terms of a single transaction are contained in several writings, those writings should be read together as one instrument. *Mongillo v. Comm'r of Transportation*, 214 Conn. 225, 229 (1990) (Covello, J concurred therein); *New Britain v. New Britain Telephone Co.*, 74 Conn. 326, 329, 50 A. 881 (1901); *Retrofit Partners I, L.P. v. Lucas Indus., Inc.*, 47 F. Supp.2d 256, 266 (D. Conn. 1999); 17 C.J.S., *Contracts*, § 298; 4 Williston, *Contracts* (3d Ed.) p. 904.

If the terms and conditions of one document are incorporated into another document by reference, the two writings will be interpreted together as the agreement of the parties. *Randolph Constr. Co. v. Kings East Corp.*, 165 Conn. 269, 275, 334 A.2d

464, 467 (1973); *Batter Bldg. Materials Co. v. Kirschner*, 142 Conn. 1, 7, 110 A.2d 464, 468 (1954); *Housing Auth. of Hartford v. McKenzie*, 36 Conn. Sup. 515, 518, 412 A.2d 1143, 1145 (1979).

The party alleging that there was a modification bears the burden of proof as to that issue. *Maloney v. PCRE, LLC*, 68 Conn.App. 727, 737 n.3, 793 A.2d 1118 (2002).

In order to prove that a contract has been modified, the party asserting the modification must show proof of mutual assent to its meaning and conditions. *Newman and Partners, P.C. v. CFC Construction Ltd.*, 236 Conn. 750, 762 (1996).

Proof must consist of objective conduct evidence showing "acts ... of such a character that they can be naturally and reasonably accounted for in no other way than by the existence" of the modification. *Ubysz v. DiPietro*, 185 Conn. 47, 54, 440 A.2d 830 (1981) (internal quotation marks omitted).

> "[A] written agreement that expressly states it can be modified only in writing cannot be modified orally.
>
> There are two exceptions to this principle. First, an oral modification may be enforced when there has been partial performance of the agreement to modify, so long as the partial performance is 'unequivocally referable to the oral modification.' *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926, 366 N.E.2d 1279, 1283 (1977). If the conduct that allegedly constituted partial performance of the oral agreement to modify was in fact compatible with the original agreement, the oral agreement will not be enforced. Second, when one party has induced the other party to rely on an oral modification, the first party may be equitably estopped from invoking the requirement that any modification be in writing. Here, too, the conduct claimed to have been performed in reliance on the oral modification must be unequivocally referable to the modification: 'Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written.' Id. at 344, 397 N.Y.S.2d at 927, 366 N.E.2d at 1283. **Thus, for either exception to apply, the conduct claimed to have resulted from the oral modification must be conduct that is inconsistent with the agreement as written.**"

11

*Towers Charter & Marine Corp. v. Cadillac Insurance Co.*, 894 F.2d 516, 522 (2d Cir. 1990) (applying New York law).

### III. Implied Contract/Promissory Estoppel

The burden rests on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract. *Lucier v. Norfolk*, 99 Conn. 686 (1923).

Promissory estoppel is akin to the concept of promissory fraud. Under the common law, a person claiming to be a victim of fraud or misrepresentation must prove that a false representation was made as a statement or fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to act on it, and that he reasonably, after relevant investigation, did so rely upon it to his injury. *Web Press Services Corporation v. New London Motors, Inc.*, 203 Conn. 342, 362 (1987).

Fraud may not be presumed or implied, but must be proven by . . . "clear, precise and unequivocal evidence." *Masotti v. Bristol Savings Bank*, 43 Conn. Sup. 360, 366, 653 A.2d 836 (1994); *Kilduff v. Adams, Inc.*, 219 Conn. 314, 328, 593 A.2d 478 (1991); *Alaimo v. Rover*, 188 Conn. 36, 39, 448 A.2d 207 (1982).

"A fundamental element of promissory estoppel . . . is the existence of **a clear and definite promise** which a promisor could reasonably have **expected to induce reliance**." *D'Ulisse-Cupo v. Board Of Directors Of Notre Dame High School*, 202 Conn. 206, 213, 520 A.2d 217 (1987) (citation omitted) (emphasis added).

The plaintiff must show some evidence that defendant intended to be bound to such a contract. *Reynolds v. Chrysler First Commercial Corp.*, 40 Conn. App. 725, 730, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996). (citations omitted;

internal quotation marks omitted).

A promise is only to be implied to enforce a manifest equity and reach a result **which the acts of the parties indicate that they intended to effect**. *Joseph v. Sulzberger*, 136 A.D. 499 (applying New York law) (emphasis added); Restatement (Second), *Contracts* § 90 (1973).

### III. Jury Trials

"The function of a jury is to try the material facts; where no such facts are in dispute, there is no occasion for jury trial. Thus the right to trial by jury does not prevent a court from granting summary judgment." *Davis v. United States*, 742 F.2d 171, 173 (5th Cir. 1984).

A proper ruling dismissing a case is not erroneous merely because it has the incidental effect of precluding a jury trial. *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002) (per curiam).

### ARGUMENT

### I. The Contract

The plaintiff has judicially admitted that his claim to an extension is based on a supposed "verbal agreement" with defendant. The plaintiff has submitted no unequivocal objective proof of the claimed modification. The defendant has submitted to this Court admissible objective evidence which strongly suggests that plaintiff's claim of an extension agreement is pre-textual. The plaintiff's own writing, directed to Timothy Yolen and authored some six months after he had pleaded before this Court the existence of an oral modification, demonstrates that plaintiff has been prevaricating in his pleadings. It shows that plaintiff, when unprovoked to defend his suit, and in full

13

contemplation of the applicable statute of limitations, essentially admitted that no such extension agreement ever existed. He acknowledged that he had only until 2001 to collect, and not until 2006; as would obviously be true if a 5-year extension agreement existed. The defendant has clearly carried the burden of the "preponderance of the evidence" test on this issue. Absent objective unequivocal proof of mutual assent to the modification, the Court should fully disregard plaintiff's allegations and protestations with respect to the claimed extension agreement.

The pledge agreement specifically incorporates the promissory note, and the promissory note specifically references the pledge of stock as security for the note. These documents were made at the same time, between the same parties, and concern a single transaction. They are doubtlessly interdependent. Taken together, they manifest in unambiguous words the express intent of the parties at the time of their making with respect to the transaction they concern.

There is no question that the promissory note and the pledge agreement must be read as a single agreement, either on general tenets of multiple-document/single-transaction contract law, or on the basis of the "incorporation by reference" doctrine. The fully integrated agreement demonstrates that it was intended by the parties to bar any future claim of an oral modification, as a matter of law.

The "no-oral-modification" clause is an unambiguous contractual provision. It is a mere *prima facie* requirement that must be met when a party to the agreement seeks to bind the other party to any purported change in the agreement. It is an affirmative burden upon the one claiming modification. The plaintiff has not met this burden.

The plaintiff claims that his inaction from 1992 to 2001 was the act of forbearance

that points to the validity of the claimed oral extension agreement. Such is also explainable as the plaintiff sleeping on his claim, or invoking his claim at precisely the moment at which he thought he had to sue in order to prosecute the note without the existence of any extension agreement; and mistakenly waiting a month too long. Such is clearly implied in his letter to Timothy Yolen of December 11, 2002, where plaintiff stated he had until 2001 to collect on the debt (six years from 1995). As the plaintiff's action of waiting to sue until 2001 is not incompatible with the terms of the original contract, it is not a partial performance that is unequivocally indicative of an extension agreement, and such does not enable him to raise a claim of promissory estoppel. Such an implication as plaintiff is arguing for would fly in the face of the unambiguously stated intent of the parties contained in the written contract. Absent unequivocal proof of conduct pointing to a valid oral agreement, the contract must be enforced as written.

Most importantly, nothing in plaintiff's *Response* shows that the defendant did anything to demonstrate his assent to such an oral modification. The plaintiff's argument amounts to "his doing nothing equals something." Likewise, the defendant's total inaction just as strongly points away from the validity of the claimed modification agreement. But Connecticut law requires more; it requires that plaintiff make a positive showing of mutual assent to the claimed modification, and it requires evidence of some act that can be naturally and reasonably accounted for in no other way except the validity of the claimed modification. The plaintiff's assertion of inaction amounting to forbearance as an indicator of the validity of the claimed oral modification is without merit.

## II. Diversity Jurisdiction

Because plaintiff has failed to prove an extension agreement, the contractual "amount in controversy" under the note is a finite amount that is below the statutory minimum for diversity jurisdiction purposes. His contractual claim is therefore limited for "amount in controversy" purposes to the balance due at maturity of $61,544.95. Plaintiff is not entitled to include any interest accrued after maturity on February 8, 1995 into the calculation of the amount in controversy, as it is non-contractual prejudgment interest (for delay in payment) that is specifically excluded by the terms of the diversity jurisdiction statute. See 28 U.S.C. § 1332(a) ("exclusive of interest and costs"). Because diversity jurisdiction in this case requires a proved contractual obligation between the parties of greater than $75,000, this Court is without subject matter jurisdiction over plaintiff's claim. It therefore must be dismissed with prejudice.

The plaintiff's failure to prove a valid and binding extension completely negatives any "good-faith presumption" afforded at the pleading stage to his jurisdictional argument. It is now known <u>to a legal certainty</u> that, from before the time of the filing of his complaint, the amount of plaintiff's claim for "amount in controversy" purposes could never have reached the minimum required under the diversity jurisdiction statute, exclusive of non-contractual interest. Without any objective proof to establish the existence of a valid and binding extension agreement, the plaintiff could never have in good faith alleged an amount in controversy that exceeds the required minimum. Whether by bad faith or mistake, the failure to reach the required minimum in contractual damages remains fatal to the plaintiff's cause before this Court.

The plaintiff has failed to prove a material jurisdictional fact being challenged in

regard to his claim. His burden was to present "competent proof" that would carry the "preponderance of the evidence" on the issue of the claimed extension agreement. His failure to carry this burden deprives this Court of jurisdiction over his action.

Proof (or lack thereof) has now been presented in this case. There is now "legal certainty." The plaintiff's claim does not meet the minimum required for diversity jurisdiction.

There is absolutely no question as to whether the Court possesses authority to decide the matter of its own jurisdiction. Any doubts that plaintiff might raise regarding the Court's authority with respect to the "statute of limitations" basis for dismissal or entry of judgment can be dispensed with on this legally sound, alternative basis.

### III. Trial By Jury

The plaintiff clearly misapprehends the import of the Seventh Amendment. One is entitled to a trial by a jury in a civil trial, but only if they have a case requiring the determination of a disputed material fact. That is the function of a jury. It is the function of a judge to make sure that the jury would have something to decide upon, if impaneled. If the plaintiff wants a trial, he has to produce competent admissible evidence to support his allegations so that a material fact is placed in dispute.

Since the plaintiff has presented no evidence of the supposed extension agreement other than his own unsupported claim, and such is not sufficient to create a disputed material fact as a matter of law under the written contract, or under Connecticut contract law generally, the plaintiff is not entitled to a trial by jury.

Likewise, the plaintiff's failure to prove a material jurisdictional fact when challenged means that dismissal of his claim is appropriate. Where a court lacks

jurisdiction over the claim, there is no occasion for a trial.

The Seventh Amendment does not preclude this Court from entering judgment against plaintiff, nor does it preclude this Court from dismissing the plaintiff's case with prejudice pursuant to Fed. R. Civ. P. §12.

## CONCLUSION

Wherefore, defendant Vaillancourt prays that this Court would now:

1. Grant defendant's motion in limine as to testimony suggested in Fact 9 and the associated note of plaintiff's *Response*;

2. Dismiss the plaintiff's action with prejudice because the complaint and subsequent proofs establish that plaintiff's claim does not meet the requirement as to amount in controversy;

3. In the alternative, enter judgment in favor of defendant as the plaintiff's claim is barred by the applicable statute of limitations; and

4. Grant defendant such other further and general relief as the Court deems just and proper.

Respectfully submitted,

*(signature)*
Karl Vaillancourt
Defendant Pro Se
29 State Street
North Haven, CT  06473

ORAL HEARING IS NOT REQUESTED

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the within reply and motion to dismiss was mailed, certified, return receipt requested and postage prepaid, to plaintiff Aaron Ben Northrop, at Reg. No. 61713-080, Victorville U.S. Penitentiary, P.O. Box 5600, Adelanto, CA 92301, on this __31st__ day of __October__, 2005.

/s/ Karl Vaillancourt
Karl Vaillancourt
Defendant Pro Se
29 State Street
North Haven, CT 06473